Toomer, Judge.
 

 Real property is governed by the law of the country where the land lies $ personal estate by the law of the country, where the owner has his do-micil. (2
 
 Ves. & Bea.
 
 131.) The succession to the personal property of an intestate, is regulated by the law of that place, which was his domicil at the time of his death. For that purpose, there can be hut one domicil.
 
 (Somerville
 
 v.
 
 Somerville, 5
 
 Ves. 750.) These are set-
 
 *78
 
 ties! principles of international jurisprudence. They are founded on public policy, and are conducive to public convenience. (2
 
 Kent's Com.
 
 344.) To ascertain then, {|ie rjgi,t of succession to 1 he personal estate of an intestate, it is necessary to inquire, where was his domicil at the period of his decease. If it were in South-Carolina, the laws of that State must furnish rules for the succession to, and the distribution of his personal estate. For these purposes, there can be but one domicil
 
 •,
 
 although there is sometimes difficulty in ascertaining that domicil, when the deceased has had more than one place of residence, at each of which he continued, occasionally, to reside to the period of his death.
 

 The statement made by the presiding Judge shows, that the intestate had no
 
 fixed residence,
 
 but resided occasionally in South-Carolina, and occasionally in this state, and that he died in Marion District, in South-Carolina, where
 
 McLeod,
 
 the assignor}-^yas duly constituted administrator of his estate. If the urtesiaie had a fixed domicil, the laws of that country must control the right of succession to his personal estate, without regard to the laws of ti e place, where he may have casually been at the moment of his decease. The intestate being at a place and dying there, is
 
 prima fade
 
 evidence that be was domiciled
 
 there;
 
 and the presumption is much strengthened, when it appears that lie had no domicil of a more permanent or fixed character, than that at which be died., The circumstance of tiie intestate’s deailt occurring in South-Carolina, if it were not bis home, might be explained, and the presumption rebutted. But unexplained, am! in the absence of other testimony, we must take that place to have been bis domicil, at the time of bis death ; and the laws of that state will furnish rules for the succession to, and the distribution of his personal estate. The administrator appointed in South-Carolina, Would be entitled to all the effects of the deceased in that state, including the bond, to be distributed according to
 
 *79
 
 the laws of (lie intestate’s domicil. The deceased dying in South-Carolina, and having tide, specialty
 
 there,
 
 he who obtained possession of it, would disregard the claims of an administrator appointed in this state, and would only notice the title of an administrator appointed there.
 

 By the laws of England, debts due by specialty are deemed the goods of the intestate, in that diocese, where the securities happen to be at the time, of his death.— Debts due by simple contract follow the person of the debtor, and are esteemed goods in that diocese where the debtor resides at the time of the creditor’s death. (Bac.
 
 Abr. Title, Executors E. 2
 
 —Com.
 
 Dig. B.
 
 4—3
 
 Salk.
 
 70,
 
 164—Cro.
 
 El
 
 iz.
 
 472.) “ Ah administrator appointed in Ireland, released a bond debt due to the intestate from a person in Ireland
 
 •,
 
 but the bond being in England at the death of the intestate, an administrator appointed in England maintained an action thereon the same bond against the obligor, because the administrator appointed in Ireland bad no conti ol of the debt, and no authority to release if.”
 
 (Dyer
 
 305—11
 
 Mass. Rep.
 
 268.) Why is this principle not applicable in our country? Why should riot a specialty, belonging to the intestate, be assets in that, state where it was at the time of the intestate’s death ? And why should it not become the property of the administrator, duly appointed in that state ? It is to be inferred from the statement of this case, that the bond which is the subject matter of this controversy, was in South-Carolina, in the possession of the intestate at the time of his decease.
 

 If South-Carolina were the place of the intestate’s do-micil at the period of his death, and the specialty was also there at that time, administration duly granted by competent authority in that state, would give the administrator right to take possession of the specialty, and he would acquire good title thereto. Having acquired possession of the. bond, be could receive payment and give an acquittance,, or he could release the debt and discharge
 
 *80
 
 the obligor.
 
 (Doolittle
 
 v. Lewis,
 
 7 Johns. Ch.
 
 49.) Au-tlsority to collect the debt and discharge the obligor, certainly implies power to assign the obligation, if it be ne-g0Cialjic. By the principles of universal law, he who has the title to property may sell and dispose of
 
 it;
 
 and be who obtains it from the owner, may assert and exercise the rights of ownership.
 

 As the Plaintiff claims under the assignment of
 
 McLeod,
 
 the administrator of the obligee, it is necessary for the, Plaintiff to show the title of the assignor. To establish this fact, the domicil of the obligee, and the place where the bond was at the time of his death, w:ere subjects of enquiry. The testimony was not full on these points
 
 ;
 
 but the Plaintiff may have omitted to introduce more evidence to prove these facts, by discovering that the presiding Judge thought the Plaintiff’s case defective on another and distinct ground.
 

 It was admitted on the trial that
 
 .McLeod,
 
 the assignor, was duly constituted administrator of the deceased obli-gee, in March, A. D. 1825, in Marion District in South-Carol in a,.
 
 where
 
 the intestate liad died in the preceding month of
 
 February;
 
 and that the bond had been executed in this State in October, A. D. 1824, and the assignment was made in September, 1825, but it does not appear at what place. Nor do I think the place where the assignment was made,
 
 material;
 
 if the specialty were negotiable, and the administrator had title thereto, it w'as assignable by him in either state.
 

 The law' of the place where the contract was made, is the law of the contract; by which it is to be expounded, and by which its incidents and properties are to be ascertained.
 
 (Harrison
 
 v.
 
 Sterry, 5 Cranch,
 
 289, 298, 302.) This specialty was executed in our State. By our laws it is negotiable, and all the rights and interests of the obligee can be transferred by endorsement. If then the specialty were in Sotjth-Carolina at the time of the intestate’s death, and that was the place of his domicil, and
 
 *81
 
 ii thus became the property of
 
 McLeod,
 
 the administrator, and being negociable by the laws of the place where it was made, like promissory notes, and having been regularly transferred by endorsement to the Plaintff, the property is vested in him.
 

 But it is correctly said, that the administrator appointed in South-Carolina, cannot bring an action in his representative character in our Courts. Administration granted in another state, gives no authority to sue here.
 
 (Morrell
 
 v.
 
 Dickey,
 
 1
 
 Johns. Ch.
 
 156—1
 
 Hay. 355—Conf.
 
 Rep. 6
 
 8
 
 —1
 
 Cranch
 
 259—3
 
 P. Wms.
 
 369.) Hence it is contended, that although "the specialty rightfully came to the hands of the assignor, was his property, was nego-ciable, and was duly transferred to the Plaintiff, yet the assignee, claiming under tiie assignment, could claim no other right or interest than that enjoyed by the assignor;, that the assignee sits in the seat of the assignor. From which it is insisted, as the assignor could not sue in this State in his representative capacity, on a grant of administration made in South-Carolina, that the Plaintiff, his assignee, cannot sue here. But questions of property, rules of distributions and rights of succession are the points involved in this case, and not the ability of a foreign administrator to maintain actions in mu* Courts.
 

 The Plaintiff labours under no disability to sue in our Courts; they are open to him. If then he acquire title to the specialty, he has both a right of property, and a right of action. A union of these rights will certainly enable him to stand erect in our Courts. Why should he be deprived of a remedy to enforce the payment of the money, secured by the specialty. It is not pretended, that he is subjected to any personal disability, which closes our Courts of law against him; nor is there any thing in the subject matter of the action, of which our Courts have not jurisdiction j neiiher can it be said, that the right of property could not be transferred by the administrator, Although U he admitted, that the Plaintiff
 
 *82
 
 rnrglit arquire the right of property from the administra" tor, yet it is averred, that the Plaintiff could not acquire from the administrator a right of action. But it is replied, if the Plaintiff acquire the right of property by the act of parties, the right of action attaches by operation of Jaw.
 

 Let it be conceded, that the right of property was transferred to the assignee, still it is contended that the assignor having no right to sue here on the specialty, Jiis assignee cannot have any remedy. It is asked if an assignee can do that which his assignor cannot ? The act of Congress, passed on the 24th of September, 1789, prescribing the jurisdiction of the Circuit Courts of the United States, gives them cognizance of all suits of a civil nature, when the matter in dispute exceeds the sum of ÜS500, and the suit is between a citizen of the State where the action is brought, and a citizen of another state. Under this act of legislation,
 
 unrestricted,
 
 it was supposed if two citizens of the same state should enter into a contract, and one should give the other a negotiable promissory note for a sum exceeding
 
 $500,
 
 that the payer could assign lhat note to a citizen of another state, and thereby give to the Courts of the United States cognizance of the matter, and thus deprive the maker of the note of the privilege of having any dispute growing out of the transaction, adjudicated by the tribunals of his own state. This exposition was given to the statute by a Congress composed of enlightened statesmen, and able lawyers; and to prevent the apprehended evil, they expressly limited the. pHsdiction of the Circuit Courts, in cases of suits on promissory notes, in favor of an assig-nee, to those notes only unwind) actions could have been sustained in such Courts by the assignor, before the assignment was made. Had it not been for this
 
 restrictive, provision
 
 which is added to the statute, the assignee, after the endorsement of the note, could have maintained an action on the note in a Court in which the assignor
 
 *83
 
 could not have sufed. ’But the evil was guarded against by sagacious legislators. The payee transferred by endorsement the right of property to the endorsee; and had it not been for this restrictive provision in tbe statute; the endorsee would'"have had by law a right of action, which was not possessed by the endorser. This appears to be a parallel ease ; the same principle applies in each case, and must lead to a like conclusion.
 

 The Defendant pleaded 61 payment, set off,” and a spe* cial plea, which the presiding Judge considered in substance, “ as denying the validity of the assignment. There was a general replication to each plea; on each of which issue was joined. The Judge instructed the Jury, that ” the administrator appointed in South-Carolina could not make a legal assignment of the bond, so as to enable the assignee to bring suit and recover tbe money in North-Carolina.” The Plaintiff then submitted to a nonsuit. In
 
 Doolittle
 
 v.
 
 Lewis, (7 Johns. Ch.
 
 49,) the Chancellor held, that a bond being in the State of Yermont at the time of the death of the intestate, and where he resided, and he being the obligee, an administrator, being duly appointed m that State, became in law the owner of the bond, although the obligor resided in New-York, and that the administrator so appointed could receive payment in New-York, of the bond, from the obligor, where the administrator could not sue in his representative capacity, and such payment would be valid, and would discharge the obligation; and that such administrator could sell the land in New-York, which had been mortgaged to secure the payment of the debt, and that such sale could be made under the power, given in the mortgage to the
 
 mortgagee
 
 and his
 
 executor
 
 or
 
 administrator.
 
 That the administrator could receive payment and give an acquittance, or release the obligor and discharge the debt, and that such acts might be done in a State, where the administrator could not sue in his representative capacity. Tuis specialty having been exe-
 
 *84
 
 Clifej ¡n North-Carolina, and being negotiable by our jaw ¡f it Were in South-Carolina at the time of the in- ' testate’s decease, and he had bis domicil there, it became tjie pr()perfy 0f the administrator appointed
 
 there ;
 
 and it is believed he could legally assign it.
 

 "When a suit is brought by an administrator in his representative character, on a contract made by his intestate, he makes
 
 a.profert
 
 of his letters of administration. If the Defendant intend to contest the Plaintiff’s-right'to sue in Iris representative capacity, it must be done by plea in abatement, and cannot be done by evidence under the general issue, or any other plea in bar; for such a plea puts-in issue the cause of action, and not the character in which the Plaintiff sues.- — (1
 
 Hay.
 
 16, 166—
 
 Conf. Rep.
 
 69—1
 
 Saund. Rep. 273, n.
 
 3—1
 
 Salk.
 
 285—7
 
 Mod.
 
 141.—2
 
 Ld. Raym.
 
 824.)
 

 •If the administrator appointed in South-Carolina had brought suit on the bond, in his representative capacity, in our Courts, he would have made
 
 profert
 
 of his letters of-administration
 
 ;
 
 and if Defendant had pleaded in bar-, he could not have objected to the character, in which the Plaintiffsued. The Defendant in this action has pleaded in bar. if then he contends so zealously, that the assignment casts all the disabilities of the assignor upon the assignee, it is but fair- to conpede, that it transfers all the rights and privileges of the assignor. Can the right of the assignor to sue in our courts be intfuired into, in the present state of the pleadings ? The cause of action is put in issue, and not the character in which the Plaintiff sues, or his assignor might sue. The true inquiry is, has the specially been assigned by a person having authority to make the assignment ? We have nothing to do with the ability of the -assignor to sue in his representative capacity, in our Courts. If the administrator of a payee of a negotiable promissory note endorse'it, the endorsee, in an action on the note against the maker thereof, never makes proferí of the letters of
 
 *85
 
 administration j nor is be required .to do so, because ho has not the same in his power or custody.
 
 (Stone
 
 v.
 
 Rawlinson, Willes, 559.—
 
 3
 
 Wils. 1.)
 

 If the proof satisfy the Jury, that the specialty was, in Jaw,
 
 the
 
 property of the administrator appointed in South-Carolina, that it was negotiable, and was so assigned as to pass the title to the Plaintiff, then the issue should bo found for him. And it did not involve the inquiry, as to the disability of the administrator to sue in bis representative character in our Courts
 
 ;
 
 but only his ability to transfer the title by assignment. The Judge considered the special plea of the Defendant as denying in substance tiie validity of tiie assignmentand so
 
 I have
 
 viewed
 
 it,
 
 for the purpose of meeting the merits of the case, however defective and insufficient
 
 that
 
 plea may be found, on íarthér examination.
 

 The rule of Saw which prevents an administrator appointed in another State from maintaining actions in bis representative capacity, in our Courts, is founded in reason, justice and good policy. It is also founded on reasons oí a technical character$ but tiie great object of the rule is, to prevent the assets being drawn, out of our State, to the injury and inconvenience of domestic creditors, our own citizens, who may have contracted with the intestate, on the faith of those assets. It is said, that if the expedient of assigning the specialty will answer the purpose, and will enable tiie assignee to sue, when the assignor could not, that much inconvenience will arise ; and
 
 that
 
 which could not be done directly, will be done indirectly. ' This mischief it is in tiie power of the Legislature to prevent. They can adopt the provision which has been inserted in the act of Congress of 1789, or they may obviate the inconvenience in some other way. This Court i,s to expound, not to make laws. But the evil cannot be alarming ; it can arise only in this class of debts, and generally speaking, they form a small portion of the assets of an intestate’s estate. And
 
 *86
 
 it is believed, that a creditor, one of our own citizens, using due diligence, and applying- in due season to a Court of Equity, may prevent, the removal of assets of jjjjg kjmi f0 ||(S injury. He may at least prevent any combination of the administrator with another person, to withdraw the assets. Confederating for this purpose, or any other like contrivance, to defeat the operation of the law, and to injure creditors, would be fraudulent"
 

 The bond was the evidence of the debt; it was in the bands of the administrator appointed in SouHi-Carolina. No administrator here rould, under such circumstances, enforce payment of She debt.
 

 I think the nonsuit should be set aside, and a new trial granted.
 

 Hall, Judge.
 

 I think the Plaintiff is entitled to recover on the bond, on which this suit was brought.
 

 It does not appear that the intestate was a citizen of any one state or country; but that previous to his death, lie sometimes lived in North-Carolina, arid sometimes in Sontb-Carolina, and that he died in the latter State.— That circumstance must be considered as a substitute for a prior domicil or citizenship. The letters of administration on his estate were therefore properly issued in South-Carolina, and the administrator had a right to assign over the bond, on which this suit was brought.
 

 It is necessary to take out letters of administration in this State to enable him to sue, but not to enable his assignee to do so.
 

 Per Curiam. — Judgment of the Court below reversed.