Ruffin, Chief Justice.
 

 Margaret McKay died intestate in Cumberland County, and Daniel Smith, of the same county, obtained letters of administration of her estate, which consisted of sundry articles of personal property, including some slaves, as claimed by her next of kin. She left several children surviving her; among, whom was Lauchlin McKay, who resided in the State, of Mississippi and died there intestate, leaving a widow and children then and now residing also in that State. The widow, by letter of attorney, appointed M. Munroe and R. Munroe her attornies to take administration in this State of her late husband’s effects; and under that authority they applied to the County Court of Cumberland for adminiátration of the goods of Laughlin McKay, deceased; and the same was granted accordingly. Neither of the Munroes is of kin to the intestate Lauchlin; but Daniel Smith is of kin-to him, and also married the sister of said Lauchlin, and she is the nearest of kin of the intestate resident in North Carolina.
 

 Upon this state oflacts, Daniel’ Smith applied to the County Court of Cumberland to revoke the grant of administration to the Munroes, and also to grant the administration to himself, as one.of the next of kin of the party deceased, or in right of his said wife, the sister and nearest of kin in this State of the said Lauchlin deceased. The County Court refused each motion, and Smith appealed to the Superior Court, which' affirmed the sentence before pronounced, but allowed an appeal to this Court. In the Superior Court several points were made and decided, on whi'ch'the case comes in review before us. .They are,
 

 First:
 
 whether the'Comity, Court of Cumberland could grant to any person administration of the goods of Lauchlin McKay, inasmuch as he did not die in that county, but his residence and death were in another State. Upon this the opinion of the Court was in the affirmative.
 

 
 *347
 

 Secondly:
 
 whether a claim or right to a distributive share as next of kin to an intestate, dying possessed of goods in that county, and whose administrator there resides, may be accounted
 
 bona notabilia
 
 in that county. Upon this the court was of opinion that sucha claim in Cumberland was sufficient to -give the court of that county jurisdiction.
 

 Thirdly:
 
 Had the court power to grant administration to th'e widow’s appointees?
 

 Fourthly:
 
 Had not'Smith, upon the whole, the preferable right to administer under ,the statutes of this State?
 

 Upon the two last points the court held that the County Court might well prefer to grant the letters of administration to the attorneys of the widow rather than to Smith, a relation against whom there was a claim in favor of the party deceased.
 

 The opinion of this court accords with that of the Superior Court, that the sentence of the County Court should be. affirmed.
 

 The first point is not made in the form, probably, to express the true meaning of the parties; for we suppose the intention was, not to raise the question, whether the court of Cumberland, as contradistinguished from the other courts of the State, could grant administration of the goods of a party, who did not die in this State, but resided and died abroad; but whether, in such a case, administration could be granted by any court of North Carolina. The propriety of the grant being made in that particular county depends upon the solution of the second question rather than on the first. Upon the general question, whether the courts of this State may grant administration of the goods of a person living and dying in another State, we entertain no doubt. Administration in another country will not enable the administrator to sue here.
 
 Butt's Admr
 
 v. Price, Conf. Rep. 68. Unless, therefore, we grant administration, the estate here cannot be administered, either for the benefit of the creditors here or those abroad, or for the benefit of those persons who are en•titled to the surplus according to the law of the domicil of the party deceased. Nc country, having a just regard for its own character or the comity due to other countries, can
 
 *348
 
 refuse her authority to collect and' apply the goods
 
 within
 
 her jurisdiction in the proper course of administration. In England, administration of the goods of a foreigner has always been granted, no matter where the party resided or died. The argument to the contrary with us rests, therefore, entirely upon the legislation of this State. The act “ concerning executors and administrators,” Rev. Stat. c. 46, s. 1, provides that “ letters testamentary and letters of administration shall be granted in the court of the county where the testator or intestate had his usual residence at the time of his death, or, where the deceased had fixed places of residence in more than one county, then in either.” Upon this enactment it is contended, that the County Court hath but a special and limited jurisdiction, to grant administration in the particular case, in which the deceased had a residence within that county, and in that case alone; and, therefore, that the grant in any other case is void. If this were so, this application by Smith would be rejected, since it is vain to revoke a grant which in itself is a nullity.
 
 Collins
 
 v.
 
 Turner,
 
 No. Car. T. Rep. 105. But we do not adopt that construction of the statute. The section is composed of the digested provisions of the acts of 1777, c. 115, s. 57, and of 1789, c. 308, s. 1, and, to arrive at its true meaning, is to be understood as those acts themselves would be. By the act of 1715, c. 10, s. 3, letters of administration issued only put pf the Secretary’s office, under the signature of the Governor and the seal of the Colony. Of course, the authority to issue letters from that source extended to every case; in which there could be administration, without regard to the residence of the deceased in any particular county. After the revolution, the jurisdiction was transferred to the County Courts by the act of 1777, by which it was enacted “that the Courts of Pleas and Quarter Sessions shall and may, within their respective counties, take probate of wills, and the said courts shall and may make orders for issuing letters testamentary and letters of administration to be signed and issued by the Clerk.”
 

 This act does not make the residence of the deceased the criterion for ascertaining the particular court which should have the jurisdiction of granting administration. The terms
 
 *349
 
 “ within their respective counties” could not have the effect of confining the jurisdiction to the case of the death of the party within the county; but must have been understood as referring to
 
 bona notabilia,
 
 the place of the residence or of the death of the party within the county, or to any other fact, which, at common law, imparted or withheld jurisdiction, as between the different courts of probate. Residence is not mentioned in the act, and cannot therefore, be interpolated, any more than any other circumstance, as that which determines the jurisdiction. Those words “within their respective counties” do not, therefore, limit in any degree, or define the cases, in which administration is to be granted by some court in this State, but are intended merely to provide that, as between courts of the several counties, the jurisdiction of each should depend upon the same considerations that determined the jurisdiction of the several courts of ordinary at common law; namely, the residence or death the party, or his effects being within the territorial jurisdiction of the particular court. It had doubtless been found, that the general letters of administration, issued under the Colonial seal and embracing all the goods in the Colony, were extremely convenient; inasmuch as there could arise no dispute as to their validity, in respect of the extent of the jurisdiction from which they emanated, and the creditors knew in whose hands to seek the assets. It is not probable the Legislature intended to abrogate that principle; especially as no court was constituted, in the nature of the Provincial Ecclesiastical Courts of England, to grant administration, where there were effects in different counties; and as that was the known policy, it was probably the usage for each court that could grant administration at all, to grant it fully, so as to extend to all the effects. It would seem, from the preamble of the act of 1789, c. 308, that something the kind did occur; for that recites that “ the method of proceeding had not been defined with sufficient precision in the act of 1777, whereby great irregularities had crept into practice, and complaints had been made of precipitate and injurious decisions:” whence it may be inferred, for example, that if a person died ir. a particular county, having effects in that and
 
 *350
 
 another county, in practice a full administration was grant-in both, which must have often occasioned surprise and' inconveniences. To remedy those irregularities and mconveniences, and by way of amendment to the act of
 
 1777,
 
 it was .enacted “that all wills shall be proved and administrations granted, in the court of the county where the testator or intestate had his usual residence at the time of his death, or, in case he had fixed places of residence in more than one comity, in either of said counties.” Upon this enactment, we cannot put the construction contended for on the part of the appellant. The act of 1789, is not a grant of the jurisdiction to appoint administrators. ;That had been conferred generally by the act of 1777 on the- County. Courts; (¡and from the want of precision in the terms, conflicting jurisdictions were exercised by different courts, whence it became necessary to settle that .conflict in those cases in which it most commonly occurred. Hence the jurisdiction is given to the court of the county, or of one of the counties in which the party had a fixed domicil at his death. That was the single purpose of that section of the act. It embraces in its provisions but the case of the death of a person resident in one or more counties of this State, and in such case confers the jurisdiction upon the court of any of those counties. The case of the death of. a person having no usual place of residence, or none in this State, is altogether out of this last act, and depends upon the previous one of 1777, and the general principles of law existing anterior to the enactment of either of the statutes under consideration. Consequently there may be an administration in this State of the goods of a person who was the citizen of another State, in which he died.
 

 This opinion is not in conflict with that of
 
 Collins
 
 v.
 
 Turner;
 
 for there Blackburn, the party deceased, had his domicil in Chowan, and Collins, his debtor, resided there. There was consequently neither a residence nor effects in Bertie, where Turner took administration.
 

 In the discussion of the preceding point, several matters were necessarily considered, that go far to determine the most material part of the second question. If there be
 
 bo'
 
 
 *351
 

 net notabilia
 
 in Cumberland, we think that is a proper county in which to take the administration. It does not appear that there are any effects in any other part of this State; and, therefore, we need not now say to what extent the administration ought to be granted, or will be valid. We think there should be
 
 bona notabilia
 
 in the county, because the canon, law, as administered in peculiar jurisdictions in England, was the law of that country upon this subject; and, like other parts of her unwritten law, was brought here by our ancestors. But the practice has not been in this State for each court to grant administration of the effects within its county; and, from the settled usage in that respect, and the convenience to administrators, ueif of kin, debtors and creditors, we are inclined to hold that, although special administrations maywe granted, yet the court of any county, in which there are
 
 bona notabilia,
 
 may grant administration' of all the effects of the deceased within the State. That the right to a distributive share of an intestate’s-' estate is to be accounted
 
 bona notabilia
 
 we have no doubt. Goods in possession and debts, however desperate, are so considered, and even a claim, on account of purchase money, of one who had' sold an estate, but had made an assignment for the benefit of creditors, was held to be of this character by Sir
 
 John
 
 Nicholl,
 
 Coates
 
 v.
 
 Brown,
 
 1 Add. 345.
 

 The power and duty of the court, when the next of kin reside abroad, to grant administration to the appointee of the next of kin, was held in this State in the early case of
 
 Ritchie
 
 v.
 
 McAustin,
 
 1 Hay. 220; and we believe that decision has guided the courts in subsequent cases. We do not find much upon the point in elementary works, nor in the decisions of the Ecclesiastical courts; yet we see enough stated incidentally to satisfy us that' it is the common practice in those courts. There are several cases, in which the persons entitled were foreign public characters, and administration was granted to those authorized by them to fake it, and for the benefit of the principals. In
 
 Farrington
 
 v.
 
 Clerk,
 
 3 Doug. it appears the party had taken administration
 
 as the attorney of the next of kin.
 
 And in
 
 Anstruther
 
 v.
 
 Chalmer,
 
 2 Simons 1, the letters were to “ J. C. & A. F. as
 
 *352
 
 the attorneys of E. Campbell, the sister and only next of bin of C. A.,.for the use and benefit of the said E. Campbell.” Upon an enquiry at . the instance of the Tice Chance^or as t0 ^ effect of those words “for the use and benefit,” the Deputy Register of the Prerogative Court certified, that the words were invariably used “ where the grant was to persons under a power of attorney from the party entitled to the representation;” but although they are “ for the use and benefit” of that person, they do not exclude the claim of any other person to share in the personal estate. What effect, then, they can have, it is not easy to see; nor is it needful we should consider. . The passage is cited by us only to shew that there is “an invariable usage” upon this point, in conformity to which, in substance, has been the course of our courts.
 

 Having arrived at the foregoing conclusions upon the preceding points, it follows that neither the appellant Smith nor his wife, if she had applied, could be preferred
 
 before
 
 the deceased’s widow, although the latter resides out of the State. 1 William’s Ex’rs 257, 263. It is to be presumed, nothing to the contrary appearing, that by the law of Mississippi a widow is entitled to a share of her intestate husband’s personal estate; and, therefore, may ask for the administration here for herself, and, by consequence, for hex-attorneys.
 

 Per Curiam. Judgment below affirmed.