Nash, J.
 

 Our only enquiry is, as to the legal correctness of the charge. Was his Honor correct in stating to the jury that they were to be instructed by the court, what the law of Virginia was, and in stating to them, what was that law ? In other words, was it a question of law for the decision of the
 
 *190
 
 court, or one of fact for the determination of the jury? We ~^at his Honor erred, and that it ought to ha-ve been left to the jury, as a question of fact. The ease does not arise under any statute of Virginia, but under the common law of that State. And we are scarcely at liberty at this day, to consider the question as an open one. Repeated decisions of this court have settled it. In
 
 Knight
 
 v.
 
 Wall,
 
 2 Dev. & Bat. 129, the court say — “The
 
 court
 
 in this State do not know the law of other States, and a controversy respecting that law is ordinarily one of fact, which must be decided on evidence by the jury, under the instruction of the court. The only exception, we are aware of, is to be found, when the plea of
 
 mil tiel record
 
 is pleaded to a judgment or other proceeding in a court of record in another State, where from the necessity of the case, the court to whom it is exhibited, must pass, not only on the legal existence of the supposed record, but upon its effect.” Here then is an express adjudication, .establishing the law governing this case, and the cases referred
 
 to
 
 fully sustain it.
 
 State
 
 v. Jackson, 2 Dev. 563, and
 
 Carter
 
 v.
 
 Wilson,
 
 1 Dev. & Bat. 364. In the first, it is decided that the
 
 existence
 
 of a foreign law is a fact. The court cannot judicially know it, and therefore it must be proved, and the proof, like all other, necessarily goes to the jury. What was the law of Virginia in this case, the existence of which was to be proved? The statute, which was read in evidence, speaks of gifts and loans, so far as the rights of creditors are concerned — in other words, a statute of frauds; it makes no regulations whatever as to the rights of the donor and donee, of the bailor or bailee, as between themselves. It is entirely silent as to any presumptions arising from the possession of the son-in-law. What was the presumption of law arising from such a possession, was the question governing the case — in fact, the law of the case. The first thing to be done, was to prove the
 
 existence
 
 of the law, and according to the opinion in the
 
 State
 
 v. Jackson, it was a question of fact to be decided by the jury. How was it to be done? In this case, by the testimony taken, and that consisted of the opinions of three gentlemen learned in the laws
 
 *191
 
 of that State, In one of these opinions it wa3 stated, that from such a possession of a son-in-law, a gift was presumed; and in another, that from sucha possession, a loan was presumed— and the third, that no presumption arose of either kind, but that it was a matter of fact to be determined by the jury, in view of all the circumstances attending the possession in each case. Here then'was a conflict of testimony upon the point in controversy, the existence of the law of Yirginia — -not contained in any statute or record, but to be found, if at all, in the common law of that State. The existence of such alaw could be proved only by the opinions of persons learned in that law. Instead of leaving that testimony to the jury to'be weighed by them, and directing their attention to the circumstances attending the possession of the intestate, the presiding Judge, considering it a question of law for the court, decides it himself, and informs them that, by the law of Yirginia, such a possession by a son-in-law, is presumed to be a gift. In so'charging the jury we think his Honor erred’.
 

 We do not mean to say, that wíien a case arises under a statute of a sister State, it is not the province of the court to decide, both the existence of the statute and its proper construction. In such a case, the statute beihg aiithenticated in the manner pointed out by the' Constitution of the United States, and the act of Congress, both the fact of its existence and its proper construction, is matter for the court. So also, when the existence of such a statute is proved in the manner directed by the act of our Assembly, to the satisfaction of the jury, its exposition belongs to tiie court as entirely, in both the last cases, as if it were a statute of our own State. To the cases already cited,- from our own reports, as sustaining the view we have taken of the question involved in this case, may be added that of
 
 Brockett
 
 v.
 
 Norton,
 
 4 Con. Rep. 517, and
 
 Thrasher
 
 v. Grill, 3 Gill & Johnston, 234, 242.
 

 Per Curiam, Judgment of the Superior Court reversed; and' a
 
 venire d'e novo
 
 ordered.