J. W. TYSON v. J. A. WALSTON, Adm'r, and others.

*Executors and Administrators—Settlement of Estates—Who Responsible for Debts.*

1. A testator, after certain specific devises and bequests to his sons, left the residue of his estate, real and personal, to his three daughters, charged with the payment of his debts and certain pecuniary legacies. He further directed that the daughters should live on the land until the majority of the youngest, when all the property should be divided. The executors, who were also appointed by the will guardians of the daughters, were empowered by the testator to purchase "farming im-

plements, teams, and such other things as may be necessary," and "to employ laborers by paying them wages in money or a portion of the crops," in order to raise a sufficiency from the land for the support and education of the daughters. The executors, A and B, both died before the estate and guardianship had been settled and determined, but A, in his life time, had obtained from the plaintiff labor and supplies for making crops on said land devised to the daughters : *Held*, that the executor or administrator of A, and not the administrator *d. b. n.* of A's testator, was responsible *to the plaintiff* for such indebtedness.

2. Where the will does not create a trust for the payment of debts, an executor is liable personally, and not in his representative capacity, on demands originating wholly after the death of his testator.

(*Kerchner* v. *McRae*, 80 N. C., 219 ; *Hailey* v. *Wheeler*, 4 Jones, 159 ; *Devane* v. *Royal*, 7 Jones, 426 ; *Kessler* v. *Hall*, 64 N. C., 60 ; *Hall* v. *Craige*, 65 N. C., 51 ; *Fessenden* v. *Jones*, 7 Jones, 14, cited and approved.)

CIVIL ACTION, tried on appeal from a justice of the peace, at Spring Term, 1878, of PITT Superior Court, before *Henry, J.*

Jeptha Walston left a last will and testament wherein after devising and bequeathing lands and personal property to his two sons, Joseph A. Walston and John J. Walston, he devised and bequeathed his home tract of land, containing four hundred and forty acres, and all the residue of his estate, not given to others, to his three daughters, Martha, Amanda and Della, charging the personalty (within the residuary gift) with the debts of the testator, with a pecuniary legacy of five hundred dollars to a son of his wife by a former husband, and with a legacy of one thousand dollars to his wife. And among the clauses of the will material to the decision of the question presented on the appeal, are the following:

"I give and devise to my three daughters (above named) their heirs and assigns forever, the tract of land on which I now reside in Pitt county, containing four hundred and

forty acres, more or less. The residue of my property and estate of every description after paying my debts, funeral expenses, and settling my estate, the bequest of five hundred dollars to my step-son, Charles Taylor, and one thousand dollars to my wife, as secured to her by a written agreement entered into between us before our intermarriage, I give and bequeath unto my said three daughters, their executors and administrators.

"It is my will and desire, and I do hereby direct, that the land and other property and estate herein devised and bequeathed to my three daughters, be kept in common and not divided between them until the youngest one of them shall attain the age of twenty-one years; that until then, they may be permitted to reside on the land and be supported and educated out of the annual income which may arise from the sale of the surplus crops made on the land under the management and direction of their guardians hereinafter appointed, provided however, that in case either of my daughters should marry before the time arrives for the division to be made, she shall not be permitted to live on the land after such marriage, but shall be entitled to receive annually one-third of the income arising from the land, to be ascertained by deducting from the gross sales of surplus crops the expenses incurred in producing the crops, and the expenses incurred in the support and education of the unmarried daughters. And for the purpose of enabling the guardians to carry on the farm-property, I hereby authorize and empower them from time to time to purchase farming implements, teams, and such other things as may be necessary for that purpose, and to employ laborers by paying them wages in money or a portion of the crops as they, the guardians, may deem best for the interest of my daughters."

The testator appointed his brother, W. Walston, and his son, J. J. Walston, executors of his will, and the same per-

sons guardians of the person and property of his three daughters. Both of the executors are dead, (of whom J. J. Walston was the survivor,) and thereupon Joseph A. Walston was appointed administrator *d. b. n.* of Jeptha Walston, and B. W. Brown became administrator of J. J. Walston, and J. R. Thigpen qualified as guardian of Della, all of whom are parties defendant, the other two daughters, Martha and Amanda, having sold and assigned all their interest under the will to J. J. Walston, one of the guardians.

The claim of the plaintiff is for work and labor done on the lands devised to the three daughters and advances in money to J. J. Walston, and the account sued on is charged to J. J. Walston as executor of Jeptha Walston. And it is stated in the case of appeal that the services and money sought to be recovered were rendered and advanced when J. J. Walston was living on the land with his ward, Della, and after the death of his co-guardian, and after the purchase of the shares of the other two daughters.

The question presented for decision in the court below, and for review in this court on appeal, is on whom the liability rests for the plaintiff's claim? whether on the estate of Jeptha Walston, or on the estate of J. J. Walston, during whose guardianship the debt was contracted, or on the estate of Della, the ward, in the hands of J. R. Thigpen, her present guardian?

The court below held that the liability was on the administrator *d. b. n.* of Jeptha Walston, and the appeal by him presents the question of the legal accuracy of that judgment.

*Mr. W. B. Rodman*, for plaintiff.
*Messrs. J. B. Yellowley* and *J. B. Batchelor*, for defendants.

DILLARD, J., after stating the case. The intention of the testator was, and such we think is the legal effect of the will,

to dispose of his estate of every kind.   After giving real and personal property specifically described to his sons, Joseph A. and J. J. Walston, he devised his home place and all the residue of his estate not given to them, to his three daughters, charged with his debts and two pecuniary legacies, one to his step-son and the other to his wife.   This being done, clearly there would be no debts or liabilities contracted by the testator to pay, and nothing left in the hands of the executors as such to pay with.   Hence it would seem to have been the purpose of the testator to put his entire estate as soon as possible in the devisees and legatees respectively, including the residuary fund to the daughters after paying his debts and the two pecuniary legacies, and not to have continued it as a trust in the executors to be answerable out of his general assets for the possible debts contracted on behalf of his daughters in the conduct of the farm devised to them, which might come as a burden on property specifically willed to others.

This view of non-liability of the estate of the testator for the possible debts contracted for labor on the farm devised to the daughters, is put beyond question, when regard is had to the manner of the devise and the special directions given by the testator in reference to the management of their property.   The gift is of the home tract of land of four hundred acres, presently enjoyable by the daughters as an actual residence, and to be kept in common until the full age of the youngest, with the support and education of each from the annual income from the sale of crops to be made under the management and direction of their guardians, who are appointed in the will and are the same persons who are named executors therein.   And to the end that there may be income from crops raised on the farm, the testator empowers the guardians " from time to time to purchase farming implements, teams, and such other things as may be necessary for that purpose, and to employ laborers

at wages in money or a portion of the crops, as they may deem best." From this provision of the will, we take the intention to be clear that the land was to vest in possession at the death of the devisor, and to pass at once into the management of the guardians, and be. worked under their control and direction; and that the expectation was, that the crops raised after paying all expenses in producing them, including the payment of wages to laborers, would yield a surplus adequate to educate the daughters. We. think therefore the true intent and meaning of the will is, that the trust of conducting the farm and paying expenses thereby incurred was put on W. Walston and J. J. Walston in their characters as guardians, and that the means for such purpose.was to be derived from the sale of. crops, or money in their hands as the net surplus of the residuary. fund belonging to the daughters.

Seeing then that the plaintiff cannot look to the personal representative. of Jeptha Walston, on the notion that the will created a trust for the payment of his and such like debts, there can be no action against him in any other view, because no executor or administrator can be subjected in his representative capacity on any demand created or originating wholly after the death of his testator. or intestate. *Kerchner* v. *McRae*, 80 N. C., 219; *Hailey* v. *Wheeler*, 4 Jones, 159; *Devane* v. *Royal*, 7 Jones, 426; *Kessler* v. *Hall*, 64 N. C., 60; *Hall* v. *Craige*, 65 N. C., 51.

How then is the plaintiff to be paid? He ought to be paid his debt by some one. The labor and advances of the plaintiff for which this action is brought, were rendered and furnished on the land devised to the three daughters; but it was at the time when J. J. Walston, the surviving guardian and then the owner by purchase of the shares of Martha and Amanda, was living on the land with Della, now the ward of J. R. Thigpen, and therefore it.is to be taken that the debt was. made upon an.express or.implied

contract with J. J. Walston, who was then occupying and conducting the farm for himself and Della.

J. J. Walston being in possession and conducting the farm for himself and Della, and contracting with the plaintiff as we have seen, the liability was on him in his life time, and on his administrator since his death to pay the plaintiff, with the right in accounting with Della in respect of her third interest in the crops sold and other assets embraced in the residuary fund, to take a proper credit on account of the plaintiff's debt, that is, for one-third thereof. Della being in wardship is not herself personally responsible, nor Thigpen, her present guardian, but only the administrator of J. J. Walston. Where there is a guardian, the infant cannot contract even for necessaries. And hence the contract of the plaintiff, express or implied, must have been made with J. J. Walston, her then guardian, and his cause of action was against him in his life time, and against his administrator since his death. *Fessenden* v. *Jones*, 7 Jones, 14, and cases cited.

The conclusion then is, that His Honor erred in adjudging Joseph A. Walston, as administrator d. b. n. with the will annexed of Jeptha Walston, to be responsible for the plaintiff's demand, and the judgment below to that effect is reversed.

Error. Reversed.