R. J. HALL, admr., v. SOUTHERN RAILWAY COMPANY.

(Filed 11 December, 1907).

1. **Executors and Administrators—Death by Wrongful Act—Damages—Foreign Administrators.**

    The cause of action given by Revisal, sec. 59, to executors or administrators of the person whose death is caused by the wrongful act, etc., of another, etc., is given to an administrator, as such, who has duly qualified under the laws of the State of North Carolina.

2. **Same—Nonresidents—State Courts.**

    A nonresident cannot be appointed an administrator, under the laws of our State (Revisal, sec. 5, subsec. 2) ; and a nonresident administrator appointed in the State of his intestate's residence and domicile cannot, as such, sue in the courts of our State, under the provisions of Revisal, sec. 59.

3. **Pleadings—Evidence—Statute of Another State—Judicial Notice.**

    Statutes of another State will have to be pleaded and proven in this State, for they will not be taken judicial notice of here.

CIVIL ACTION, heard before *Councill, J.,* at August Term, 1907, of the Superior Court of PERSON County.

The plaintiff alleges in his complaint that his intestate, who was a flagman in the defendant's employ, was killed by the negligence of the defendant, on 11 November, 1905, in the county of Caswell, which is in this State, and that, at the time of his death, he was resident and domiciled in Danville, State of Virginia; that he was appointed administrator of the intestate in Virginia. This action was brought in the Superior Court of the county of Person. The plaintiff is now, and was at the time of his appointment as administrator, resident and

domiciled in the State of Virginia. The defendant, in its answer, denied the material allegations of the complaint. At the trial the defendant moved to dismiss the action and demurred, *ore tenus,* upon the grounds, (1) that the plaintiff could not sue in the courts of this State; (2) that he had no right to maintain this action. The court, upon consideration, overruled the motion and demurrer *ore tenus,* and the defendant appealed.

*B. S. Royster* and *E. P. Buford* for plaintiff.
*F. H. Busbee, W. D. Merritt* and *P. H. Busbee* for defendant.

WALKER, J., after stating the case: The statute of this State (Revisal, sec. 5, subsec. 2) positively forbids letters of administration to be issued to a nonresident of the State, and it is to be inferred from this enactment, as well as from the course of decisions in this Court, that the policy of the law is well established to the effect that a nonresident administrator cannot sue in the courts of this State. *Butts v. Price,* 1 N. C., 201, Ann., 2 N. C., 355; *Helme v. Sanders,* 10 N. C., 563; *Leak v. Gilchrist,* 13 N. C., 73; *Smith v. Munroe,* 23 N. C., 345; *Moorefield v. Harris,* 126 N. C., 626; *Scott v. Lumber Co.,* 144 N. C., 44. A nonresident who happens also to be an administrator appointed by a court in the State of his and his intestate's residence and domicile may sometimes maintain an action in his own name in another State—as, for instance, to recover property, possession of which he had acquired as administrator and which had afterwards been taken from him; but he sues, not as administrator, but in his individual capacity, upon his own right of possession. *Leak v. Gilchrist, supra.* There are, perhaps, other examples of a like kind. We have held, for instance, that when services are rendered by an attorney at law to an administrator or executor, the latter is liable, upon a *quantum meruit,* in his individual and not in his official capacity. *McKay v. Royal,* 52

N. C., 426.   See, also, *Tryon v. Walston,* 83 N. C., 90; *Hailey v. Wheeler,* 49 N. C., 159; *Beaty v. Gingles,* 53 N. C., 302; *Kessler v. Hall,* 64 N. C., 60; *Kerchner v. McRae,* 80 N. C., 219.   Where he must sue in his representative capacity and recover only by virtue of his office, a foreign administrator cannot sue in our courts.   Original or ancillary letters of administration must be taken out here.   The distinction between his right to sue *as* administrator, when the cause of action belongs to him only in his representative capacity, and his right to sue when it belongs to him as his own, though acquired originally by reason of his being administrator, runs clearly through all the authorities.

The plaintiff contends that he has the right to sue here upon the cause of action alleged in his complaint, because, while he qualified as administrator in Virginia, he is, under our statute, but a trustee of an express trust, and must hold the proceeds of his recovery in trust for those designated in the statute as the beneficiaries of the fund.   We cannot agree with the learned counsel who so ably and ingeniously argued for the plaintiff in this view of our statute.   We think it was manifestly intended by the statute that the administrator designated by it to sue for the damages, in case of a death caused by negligence or other wrongful act, should be one appointed by a court of this State, in the proper county.   The act provides as follows: "Whenever the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured party had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable, and his or their executors, administrators, collectors or successors, shall be liable to an action for damages, to be brought, within one year after such death, by the executor, administrator or collector of the decedent; and this notwithstanding the death, and although the wrongful act, neglect or default causing the death amount in law to a felony.   The amount recovered in such action is not liable to

be applied as assets in the payment of debts or legacies, but shall be disposed of as provided in this chapter for the distribution of personal property in case of intestacy." Revisal, sec. 59. Can anyone read that section and conclude that the Legislature intended that the action which is authorized by it could be brought by a foreign administrator? The fair presumption would be that, when the act refers to an administrator, it means, nothing else appearing, a domestic administrator, especially when the decisions of the highest Court of the State have uniformly established that a nonresident administrator cannot sue in the courts of this State. The statute requires the suit to be brought by the administrator in his official and not in his private or individual capacity. He must sue *as* administrator. Can words convey that idea any more distinctly and clearly than those used in the section quoted? We have virtually held in two cases that this is the true construction of the act. *Hartness v. Pharr,* 133 N. C., 566, and *Vance v. Railway,* 138 N. C., 460. In the case last cited we said: "When it was provided that the action should be brought by the administrator, it was intended that he should be appointed by the Clerk of the county where the death occurred, if the decedent was a nonresident, domiciled in another State and without assets situated here." But in *Vance v. Railway, supra,* we also cited with approval the case of *Brown v. Railroad,* 30 S. W. (Ky.), 640, as follows: "Within the line of the general statutes on this subject, defining when, under what circumstances and what courts shall have power to appoint an administrator for a nonresident decedent, it may be that the matter sued for in this action is not a debt or demand belonging to or owned by the decedent at the time of his death. Neither is it strictly personal estate of the decedent. But, beyond these general statutes, we think the particular statute applicable to cases of this kind, wherein the right of action is expressly given to an administrator, necessarily implies the right to have an administrator ap-

pointed by the local courts for this purpose alone, if there be no other necessity or right or authority for such an appointment. And we deem the court of the county where the injury was done and where the man died the proper court to entertain such jurisdiction." The case of *In re Estate of Mayo,* 60 S. C., 415, was cited with approval, as follows: "The statute is remedial and should be liberally construed, so as to accomplish its object. We, therefore, hold that the statute creating a right of action which cannot be enforced except by an administrator, and providing for a special distribution by said administrator of the proceeds, will warrant the probate court of the county where the intestate was killed in granting administration for the purpose of enforcing such right of action. This view is well supported by authority in other jurisdictions." But we think that the decision in *Hartness v. Pharr, supra,* is more to the point. We held in that case that an administrator appointed in this State should bring the action and distribute the funds, according to the laws of this State, where the death occurred, although there had been a prior administration in South Carolina, where the intestate was domiciled at the time of his death. The contest there was distinctly between the administrator appointed in South Carolina and the plaintiff in the suit, who was afterwards appointed administrator in this State. The case of *McDonald v. McDonald,* 28 S. W. (Ky.), 482, was cited and approved as an authority supporting our decision. Further considering the question (at p. 573), we said: "In no possible view, as we have said, can this fund be regarded as a part of the assets of the estate of the deceased. The cause of action never accrued to him and never came into existence until his death, and the recovery thereon cannot be considered or treated as any part of his estate. The doctrine that the succession to personal property is determined by the law of the intestate's domicile, as laid down in *Leak v. Gilchrist,* 13 N. C., 75, which was cited in the brief of the defendant's counsel in

support of his position, has no application to this case. The personal representative in South Carolina, in right of the next of kin, succeeded to no property, because his intestate died leaving none, unless he had effects other than money now claimed as a part of his estate. To require the defendant Pharr (the administrator appointed in this State) to pay the money to the South Carolina administrator would be in direct contravention of our statute."

This suit is of the first impression in our courts. We were cited to several cases decided in other jurisdictions which apparently give some color to the plaintiff's contention. We have examined them carefully and find none which is supported by any reasoning or argument cogent enough to induce us to depart from the principle established by this Court for many years, and we think that one of the cases cited (*Boulden v. Railroad,* 205 Pa. St., 264) would seem, in principle at least, to conflict with the plaintiff's contention. In that case the Court held that, as the administrator was appointed in New Jersey and the cause of action, to-wit, the negligent killing, occurred in that State, the action might well be brought in Pennsylvania without an ancillary administrator. But the decision is expressly based upon the fact that the administrator had qualified in the State where the cause of action arose. That is not the fact in this case, and the reasoning of the Court, which is predicated solely upon the existence of the fact in that case, would seem to be direct authority against the plaintiff. This Court, as we have shown, has for many years held, contrary to the last proposition mentioned in that case, that ancillary administration in this State is necessary. We find that the authorities in the other States are very conflicting, and those in favor of the defendant's contention are much better reasoned than those seeming to hold a contrary doctrine. In the case of *Railway v. Brantley,* 28 S. W. (Ky.), 477, a Court of exceptional ability and learning has considered the question at length and presented convincing reasons for the

conclusion reached, that an administrator appointed in one
State cannot sue in another to recover damages for a death
caused by negligence, unless specially authorized by statute
so to do; that the plaintiff not only has no capacity to sue in
such a case, but has no cause or right of action.   The opinion
in that case is not only well considered, but is in perfect har-
mony with what this Court has held to be the law for many
years in regard to the right of an administrator appointed in
one State to sue in the courts of another.

It was said by counsel for the plaintiff that the law of Vir-
ginia was similar in its provisions to our statute, but there is
nothing in the record to show what the law of that State is.
We do not take judicial notice of the statutes of another State.
They must be pleaded and proven.   *Hooper v. Moore*, 50
N. C., 130; *Knight v. Wall*, 19 N. C., 125; *Moore v. Gwynn*,
27 N. C., 187; *State v. Jackson*, 13 N. C., 564; *Hilliard v.
Outlaw*, 92 N. C., 266.   "If not pleaded and proven, the pre-
sumption, under the authorities, is that the unwritten or com-
mon law of another State is the same as the unwritten or com-
mon law in this State."   *Lassiter v. Railroad*, 136 N. C., 89;
*Griffin v. Carter*, 40 N. C., 413; *Brown v. Pratt*, 56 N. C.,
202.   But not so as to a statute.   This suit, though, is brought
upon *our* statute, and the statement that the statutes of the
two States upon the same subject are alike was made in order
to show that the distribution of the fund recovered would
necessarily be made according to our law.   Our statute would
control the distribution of the fund, whether the statutes of
the two States are alike or not (*Harkness v. Pharr, supra*);
so that it is immaterial to consider the similarity of the two
enactments, even if there were evidence of it.   We have held
in the last-cited case that the fund must not only be distributed
according to the law of this State, but by an administrator
appointed here, and that is conclusively against the plaintiff's
right to recover in this action.   Would it be right to permit
the plaintiff to recover and take the fund out of the State and

compel the distributees resident in the State, or the University if there are no distributees, to go to Virginia to litigate their rights with the foreign administrator, if he should refuse to pay over the fund upon demand? The State looks after and safeguards the interests of its own citizens in such cases, and will retain property here in *custodia legis,* in order that they may be protected in the assertion of their rights. This is but simple justice to them, and a duty, therefore, that rests upon the State. *Holshouser v. Copper Co.,* 138 N. C., 248; *Hartness v. Pharr, supra; Vance v. Railway, supra.*

Every argument based upon right and justice, as well as the best-considered authorities, are opposed alike to the plaintiff's contention that he can sue or recover in the courts of this State. We have discussed the plaintiff's right to sue, as we were asked to do by counsel, in order to put an end to the litigation, if he has no such right; but, as the ruling of the court upon the motion to dismiss was not appealable, and in the then state of the case the demurrer *ore tenus* was equivalent to such a motion, we must dismiss the appeal. Clark's Code (3d Ed.), p. 738, and cases cited.

Appeal Dismissed.