# RIVERSIDE AND DAN RIVER COTTON MILLS *v.* MENEFEE.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 169. Argued March 4, 1915.—Decided April 12, 1915.

To condemn without a hearing is repugnant to the due process clause of the Fourteenth Amendment.

Courts of one State cannot without violating the due process clause extend their authority beyond their jurisdiction so as to condemn the resident of another State when neither his person nor his property is within the jurisdiction of the former. *Pennoyer* v. *Neff,* 95 U. S. 714.

A corporation, no more than an individual, is subject to be condemned without a hearing in violation of the due process clause; and the mere fact that one who is a director, but who is not a resident agent, of a foreign corporation resides within a State does not give the courts

of that State jurisdiction over a corporation which is not doing business and has no resident agent therein. This applies to a judgment even though by implied reservation its effect is limited to the confines of the State.

Wherever a provision of the Constitution is applicable the duty to enforce it is all embracing and imperative. Due process cannot be denied in fixing, by judgment, against one beyond jurisdiction of the court, an amount due even though the enforcement of the judgment be postponed until execution issue.

The fact that a judgment rendered without due process of law may not, under the full faith and credit clause, be enforced in another State, affords no ground for the court entering a judgment without jurisdiction in violation of due process of law.

THE facts, which involve the validity under the due process clause of the Fourteenth Amendment of a judgment against a foreign corporation not doing business within the State, are stated in the opinion.

*Mr. F. P. Hobgood,* for plaintiff in error.

No appearance for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The plaintiff in error, a corporation called hereafter the Riverside Mills, was sued in North Carolina by the defendant in error, a resident of that State, to recover for personal injuries alleged to have been suffered by him while working in Virginia as an employé in a cotton mill operated by the Riverside Mills. The summons directed to the corporation was returned by the sheriff served as follows: "by reading and leaving a copy of the within summons with Thos. B. Fitzgerald, a director of the defendant corporation." The Riverside Mills filed a special appearance and motion to dismiss in which it prayed for the striking out of the return of service for the reason that

"the defendant is a foreign corporation, not doing business in North Carolina, and has not been domesticated and has no agent upon whom service can be made and that the service of the summons is invalid and does not amount to due process of law as against this defendant." This motion was supported by an affidavit of a person styling himself secretary and treasurer of the company stating the facts to be that the corporation was a Virginia one, had its place of business in Virginia, carried on its factory there, had never transacted business in North Carolina, had no property there and that the person upon whom service was made, although he was a director of the corporation and was a resident of North Carolina, had never transacted any business in that State for the corporation. The motion to strike out was refused although the court found the facts to be in accordance with the statement made in the motion and in the affidavit. The defendant answered. There was a trial to a jury and despite the insistence upon the invalidity of the summons, there was a verdict against the Riverside Mills to which it prosecuted error to the Supreme Court of North Carolina. For the purpose of that review an agreed case was made in which the facts were found to be as stated in the affidavit supporting the motion to strike out and in considering the case the court below stating the same facts reviewed the ruling of the trial court upon that premise.

Coming first to consider the statutes of North Carolina and various decisions of that State construing and applying them, the court held that as the plaintiff was a resident of the State and the director upon whom the summons was served also resided in the State, the summons was authorized, wholly irrespective of whether the foreign corporation had transacted any business in the State, had any property in the State, or whether the resident director was carrying on business for the corporation in North Carolina or had done so. The court came then to

consider decisions of this court which it deemed related to the question under consideration, for the purpose of testing how far the due process clause relied upon.operated from a Federal point of view, that is, the Constitution of the United States, to dominate and modify, if at all, the state rule. In doing so reference was made to the ruling in *Goldey* v. *Morning News*, 156 U. S. 518, and *Conley* v. *Mathieson Alkali Works*, 190 U. S. 406, in the first of which it was held that there was no basis for asserting jurisdiction as the result of service of process on the president of a foreign corporation in a State where he was temporarily present and where the corporation did no business, had no property and where the president was transacting no business for the corporation in the State where he was served; and in the second of which under like conditions the same conclusion was reached where the service was made on a director of a foreign corporation residing in the State where the suit was brought. After briefly reviewing these cases, which were both decided in courts of the United States on removal from state courts, and directing attention to the fact that in the *Goldey Case* it was observed, "Whatever effect a constructive service may be allowed in the courts of the same government, it cannot be recognized as valid by the courts of any other government," and that the same observation was reiterated in the opinion in the *Conley Case*, it was in effect decided that from the point of view of the Constitution of the United States the due process clause relied upon did not control the state law so as to prevent the taking of jurisdiction under the summons for the purpose of entering a judgment, whatever effect the due process clause might have upon the power to enforce the judgment when rendered. The court said: "Under our decisions above quoted and upon which the plaintiff relied in bringing his action the service is sufficient for a valid judgment at least within our jurisdiction." Concerning the judgment of affirmance

which it awarded, the court further said: "What opportunity or method the plaintiff may have to enforce his judgment is not before us now for consideration." Two members of the court dissented upon the ground that the decisions of this court which were referred to in the opinion of the court clearly established that there was no power to render the judgment, and that the same conclusion was required as the result of the following additional cases in this court: *Old Wayne Life Association* v. *McDonough*, 204 U. S. 8; *Kendall* v. *American Automatic Loom Company*, 198 U. S. 477; *Connecticut Mutual Life Insurance Company* v. *Spratley*, 172 U. S. 602; *St. Clair* v. *Cox*, 106 U. S. 350; *Barrow Steamship Company* v. *Kane*, 170 U. S. 100; *Construction Co.* v. *Fitzgerald*, 137 U. S. 98. To the judgment thus rendered (161 N. Car. 164) this writ of error was prosecuted.

Was error committed in deciding that consistently with the due process clause of the Fourteenth Amendment there was jurisdiction to enter against the defendant a money judgment, even although by implied reservation its effect was limited to the confines of the State and the extent to which the judgment as so rendered was susceptible of being executed was left open for future consideration when the attempt to enforce the judgment would give rise to the necessity for its solution?

That to condemn without a hearing is repugnant to the due process clause of the Fourteenth Amendment needs nothing but statement. Equally well settled is it that the courts of one State cannot without a violation of the due process clause, extend their authority beyond their jurisdiction so as to condemn the resident of another State when neither his person nor his property is within the jurisdiction of the court rendering the judgment, since that doctrine was long ago established by the decision in *Pennoyer* v. *Neff*, 95 U. S. 714, and has been without deviation upheld by a long line of cases, a few of the leading

ones being cited in the margin.[1] And that a corporation no more than an individual is subject to be condemned without a hearing or may be subjected to judicial power in violation of the fundamental principles of due process as recognized in *Pennoyer* v. *Neff,* is also established by the cases referred to and many others.

Whatever long ago may have been the difficulty in applying the principles of *Pennoyer* v. *Neff* to corporations, that is, in determining when, if at all, a corporation created by the laws of one State could be sued in the courts of another sovereignty, because of the conception that as an ideal being a corporation could not migrate and its officers in going into another sovereignty did not take with them their power to represent the corporation, such difficulty ceased to exist with the decision of this court rendered more than thirty years ago in *St. Clair* v. *Cox,* 106 U. S. 350, which, together with the leading cases which have followed it, have been already referred to. And the doctrine which they uphold with virtual unanimity has been upheld by the courts of last resort of most of the States in such a number of cases as to render their citation unnecessary. Without restating the *St. Clair Case* or the leading cases which have followed and applied it, we content ourselves with saying that it results from them that it is indubitably established that the courts of one State may not without violating the due process clause of the Fourteenth Amendment, render a judgment against a corporation organized under the laws of another State where such corporation has not come into such State for the purpose of doing business therein, or has done no business therein, or has no property therein, or has no

---

[1] *St. Clair* v. *Cox,* 106 U. S. 350; *Freeman* v. *Alderson,* 119 U. S. 185; *Wilson* v. *Seligman,* 144 U. S. 41; *Scott* v. *McNeal,* 154 U. S. 34; *Caledonian Coal Co.* v. *Baker,* 196 U. S. 432; *Haddock* v. *Haddock,* 201 U. S. 562; *Clark* v. *Wells,* 203 U. S. 164; *Hunter* v. *Mutual Reserve Life Ins. Co.,* 218 U. S. 573.

qualified agent therein upon whom process may be served; and that the mere fact that an officer of a corporation may temporarily be in the State or even permanently reside therein, if not there for the purpose of transacting business for the corporation or vested with authority by the corporation to transact business in such State, affords no basis for acquiring jurisdiction or escaping the denial of due process under the Fourteenth Amendment which would result from decreeing against the corporation upon a service had upon such an officer under such circumstances. And this makes clear why there is no ground for assuming that there was conflict between the ruling in *Goldey* v. *Morning News, supra,* where it was held that jurisdiction could not be acquired over a corporation of one State in another and different State by service on the president of the corporation temporarily in such State, and the ruling in *Conley* v. *Mathieson Alkali Works, supra,* that jurisdiction could not be acquired under the same circumstances by service on a director permanently residing in the other State, since both cases were rested upon the basis that not the character of the residence but the character and power of the one served as an agent of the corporation, was the test of the right to acquire jurisdiction.

It is self-evident that the application of these settled principles establishes the error of the decision of the court below unless it be that the distinction upon which the court acted be well founded, that is, that the enforcement of due process under the Fourteenth Amendment was without influence upon the power to render the judgment since that limitation was pertinent only to the determination of when and how the judgment after it was rendered could be enforced. But this doctrine while admitting the operation of the due process clause, simply declines to make it effective. That is to say, it recognizes the right to invoke the protection of the clause but denies its re-

medial efficiency by postponing its operation and thus permitting that to be done which if the constitutional guarantee were applied would be absolutely prohibited. But the obvious answer to the proposition is that wherever a provision of the Constitution is applicable the duty to enforce it is imperative and all-embracing and no act which it forbids may therefore be permitted. If the suggestion be that although under the jurisdiction which was exerted in form a money judgment was entered, as no harm could result until the execution, therefore no occasion for applying the due process clause arose, it suffices to say that the proposition but assumes the issue for decision since the very act of fixing by judicial action without a hearing a sum due, even although the method of execution be left open, would be in and of itself a manifestation of power repugnant to the due process clause.

It is however, unnecessary to pursue the subject from an original point of view, since in *Pennoyer* v. *Neff*, *supra*, among other things it was said that "proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process of law." And see *Mutual Life Insurance Co.* v. *Spratley*, 172 U. S. 602, where these principles were treated as self-evident. It is true that in most of the decided cases questions concerning judgments rendered without a hearing under the circumstances here disclosed have arisen from attempts to enforce such judgments in jurisdictions other than the one wherein they were rendered, presumably because the defense of want of due process was not made until the judgments had been entered and an effort to enforce them was made. But the fact that because unobservedly or otherwise judgments have been rendered in violation of the due process clause and their enforcement has been refused under the full faith and credit clause affords no ground for

refusing to apply the due process clause and preventing that from being done which is by it forbidden and which if done would be void and not entitled to enforcement under the full faith and credit clause. The two clauses are harmonious and because the one may be applicable to prevent a void judgment being enforced affords no ground for denying efficacy to the other in order to permit a void judgment to be rendered.

*Reversed.*