OLD DOMINION TRUST CO. v. FIRST NAT. BANK OF OXFORD, N. C., et al.

(District Court, E. D. North Carolina. August 28, 1918.)

No. 395.

1. COURTS ⏝351½—FEDERAL COURTS—DISMISSAL OF BILL—GROUNDS—EQUITY RULES.

    Under equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi) substituting motion to dismiss for demurrer to bill for defenses of law arising on the face of the bill, only facts appearing on the bill's face, including its exhibits, can be considered on the motion.

2. EXECUTORS AND ADMINISTRATORS ⏝122(1)—CURATORS—ACTION IN FOREIGN COURT.

    Curator of decedent's estate, having no greater right than an administrator, cannot by virtue of his appointment in one state sue in another state, even in federal court therefor, its jurisdiction being invoked only

⏝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on account of diversity of citizenship, unless the laws of the other state permit; but he may in the other state sue in his own name on a right accruing to him directly by contract or by judgment in action as curator.

3. JUDGMENT ⚙⟹951(4)—EVIDENCE OF FORMER ADJUDICATION.
Record of suit by curator of decedent's estate for instructions held not to show a judgment in its favor against a bank on a certificate of deposit issued to deceased, within the rule that on such a judgment a curator may in his own name maintain suit in another state.

4. EXECUTORS AND ADMINISTRATORS ⚙⟹122(1)—CURATORS—ACTION IN FOREIGN STATE—CONTRACT.
Transaction by debtor of deceased with one who was curator of deceased's estate and trustee for another, to bring about a payment to the cestui que trust through the debtor, the administrator, and the heir of deceased, gave the curator no right by virtue of such capacity to maintain action in a state other than that of his appointment.

5. EQUITY ⚙⟹39(1)—RETENTION OF JURISDICTION—COMPLETE RELIEF.
The rule that a court of equity, taking jurisdiction of a controversy for one purpose, will dispose of all such matters in controversy, so as to render complete relief, does not mean that it will pass on claims based on a different matter, asserted in a different capacity and entirely unrelated to the subject of the primary equity.

6. EXECUTORS AND ADMINISTRATORS ⚙⟹122(1)—CURATORS—ENJOINING PROCEEDINGS TO COLLECT TAX.
Curator may not maintain suit in a state other than that of his appointment to enjoin collection of tax against the estate; if the property sought to be taken is in that state, the administrator appointed therein is the proper party, and if it is in the curator's state, that is the proper jurisdiction.

In Equity. Suit by the Old Dominion Trust Company, in its own right and as curator of the estate of W. H. Gooch, deceased, against the First National Bank of Oxford, N. C., and others. Dismissed in part.

S. S. F. Patteson and H. M. Smith, Jr., both of Richmond, Va., for plaintiff.

A. A. Hicks, of Oxford, N. C., and T. T. Hicks, of Henderson, N. C., for defendants First Nat. Bank of Oxford, N. C., and Hobgood.

CONNOR, District Judge. The bill and exhibits, filed by complainant, disclose the following case:

W. H. Gooch, domiciled in Mecklenburg county, Va., married Margaret Corwin Radcliffe on or about the 14th day of October, 1915. On the same day he executed to the complainant a deed of trust, whereby he directed that, upon his death, his personal representative should pay to complainant the sum of $50,000, to be held as a trust fund for the use and benefit of the said Margaret, investing the said sum and paying to her the interest thereon, subject to the provisions and limitations therein set forth, which are not material to the questions presented in this case.

On the 14th day of November, 1915, the said W. H. Gooch died intestate, leaving his widow, and Annie W. Suhor, his only child, by a former marriage, as his sole distributee and heir at law. Within a few days subsequent to the death of Gooch, his brother, the defendant J.

⚙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. Gooch, was appointed administrator by the court of Mecklenburg county, Va., having jurisdiction in the premises, and a few days thereafter he was appointed and qualified as administrator of said W. H. Gooch, deceased, by the clerk of the superior court of Granville county, N. C.; the deceased leaving personalty in said county and state.

On December 22, 1915, the letters of administration issued to J. H. Gooch by the court in Virginia were revoked, and he was removed from said office. On the same day complainant, Old Dominion Trust Company, was, pursuant to the provisions of Code Va., § 2534, appointed curator of said estate, and qualified by filing bond as required by the statute. The appointment by the clerk of Granville county, N. C., has not been revoked, and defendant J. H. Gooch is, and was at all times since his appointment, the duly qualified administrator of said W. H. Gooch in respect to the personal estate of said deceased in North Carolina. The appointment of complainant, as curator, was affirmed by the Court of Appeals of Virginia. Gooch v. Suhor, 92 S. E. 843.

At the time of his death W. H. Gooch held a certificate of deposit issued by defendant First National Bank of Oxford, N. C., dated December 22, 1914, for the sum of $80,300, which was found in the iron safe of said Gooch, and taken into possession by complainant, by virtue of its appointment. It is now, and has at all times since its qualification as curator been, in possession of said certificate.

On the 15th day of December, 1915, Annie W. Suhor, desiring to deposit with complainant, as trustee, pursuant to the provisions of the deed executed by her father, W. H. Gooch, the sum of $50,000, pursuant to an arrangement made between the defendant Bank of Oxford, J. H. Gooch, administrator of W. H. Gooch, deceased, complainant, and herself, borrowed from the defendant Bank of Oxford the sum of $50,000 and executed to said bank her promissory note, with the following provision written therein:

"As collateral and further security for the payment of this note, there is attached hereto my order on J. H. Gooch, administrator of W. H. Gooch, deceased, for the payment of the same."

On the same day, and in pursuance of said arrangement, Annie W. Suhor gave to the Bank of Oxford her order on "J. H. Gooch, administrator of W. H. Gooch, deceased, Stem, N. C." directing the payment to said bank of her note out of any moneys coming into his hands as administrator of W. H. Gooch. The said order set forth the purpose of Annie W. Suhor to be to provide for the payment to complainant, as trustee, of the amount provided for in the deed of trust, concluding:

"As heir of my father, and for the purpose of carrying out his said marriage contract, referred to above, I have borrowed the money from the First National Bank of Oxford, N. C., and made the payment."

This order was indorsed:

"I accept the above order.

"J. H. Gooch, Administrator of W. H. Gooch."

The defendant J. H. Gooch advertised in the newspaper of Granville county, N. C., notice of his appointment, as required by the laws of

said state. Said sum of $50,000 was paid to complainant, trustee, by Annie W. Suhor, and received by it pursuant to the provisions of said deed of trust.

Margaret Gooch, widow of W. H. Gooch, filed a bill in the United States District Court, seeking to set aside said marriage contract, or deed of trust (244 Fed. 361, 156 C. C. A. 647; 248 Fed. 870, —— C. C. A. ——), which was decided adversely to her. Upon an appraisal made in accordance with the Code of Virginia, it appeared that W. H. Gooch owned, at the time of his death, real and personal property valued at about $254,000, including the certificate of deposit issued by defendant Bank of Oxford, all of which was taken into possession of complainant as curator. Complainant avers that:

"A short time after the qualification of complainant as curator it sought to obtain from said Bank of Oxford some security for the said deposit, and informed said bank, if this security could not be obtained, that complainant would proceed to collect said certificate of deposit. As a result of the negotiations which followed, which were conducted on behalf of complainant by its vice president, Henry E. Litchford, and on behalf of said bank by W. H. Hunt, its president, the right of your complainant to collect this money and to demand security for its forthcoming was recognized, and a contract was made by which it was agreed between your complainant, the Old Dominion Trust Company, and the said First National Bank of Oxford, that the said First National Bank of Oxford would surrender to the said Old Dominion Trust Company, as security, for said deposit, the aforesaid note of the said Mrs. Annie Wayne Suhor for $50,000. This agreement was entered into on February 11, 1916, and is set forth in the letter of W. H. Hunt to your complainant, bearing that date."

The bill sets out extracts from the letter which, after stating the inclosure of the note, in accordance with the conversation and understanding, contains the following:

"You are to hold Mrs. Suhor's note for our account and as protection to you on account of the certificate for eighty thousand three hundred dollars ($80,300) issued by this bank to W. H. Gooch, and now held by you as curator for estate of W. H. Gooch, deceased."

Following this language is an agreement that Mrs. Suhor's note should bear, from that date, interest at 4 per cent., and all the other notes held by the bank against the estate of W. H. Gooch were to be chargeable with 4 per cent. interest from that day, "except any balance found to be due the bank should bear 6 per cent. interest." Complainant received from defendant bank, and now holds, the said note of $50,000, pursuant to said agreement.

On the 7th day of August, 1916, complainant, as curator, filed its bill in the circuit court of Mecklenburg county, Va., "for conformity," making Margaret C. Gooch, Annie Wayne Suhor, and her husband defendants thereto. In this cause, among other orders, a decree was made by the court ordering "an account of the debts and liabilities [of the estate] to be taken before one of the commissioners of the court."

Chas. T. Reeks, Esq., commissioner, sat at Clarksville, Va., on August 14, 1917, for the purpose of executing the provisions of said decree. It is alleged that:

"The said First National Bank of Oxford, by its president, W. H. Hunt, and by its attorney, A. A. Hicks, appeared at Clarksville, Va., before said Commissioner Reeks and undertook to prove its claim to certain set-offs against said deposit of $80,300; said set-offs consisting of certain past-due notes purporting to have been executed and given by W. H. Gooch during his lifetime to one Fletcher A. Benton and others, which said notes came into the possession of the Bank of Oxford, as admitted by it, after the death of said W. H. Gooch, all of which will more fully and at large appear by the testimony of said W. H. Hunt, given before said commissioner, which is hereto attached, marked 'Exhibit A-3,' and prayed to be read and considered as a part of this bill of complaint."

Complainant further alleges that the commissioner allowed some of said set-offs and disallowed others, referring, for the purpose of showing the proceedings before the commissioner, to a certified copy of his report attached, marked "Exhibit A-4," and asked to be read and considered as a part of the bill. While the allegations of the bill upon the motion to dismiss, must be taken as true, the report of the commissioner must be read in connection therewith, and called in aid by the court in ascertaining what was done by the parties and the commissioner upon the hearing.

Complainant further avers that the circuit court of Mecklenburg county, on October 17, 1917, "approved and confirmed said report of Commissioner Reeks, after carefully considering the testimony of the said W. H. Hunt, president of the First National Bank of Oxford, N. C., and ascertained the correct balance due your complainant, as such curator, to be $80,300, with interest thereon, subject to a credit of only $8,950.15, and directed your complainant to collect the same. A copy of the decree is attached to the bill marked "Exhibit A-5."

At the April term, 1918, of the superior court of Granville county, N. C., defendant Bank of Oxford instituted an action against J. H. Gooch, administrator of W. H. Gooch, deceased, and in its complaint therein avers that it was indebted to defendant's intestate in the sum of $80,300 on account of the certificate of deposit referred to; that it holds certain notes executed by said W. H. Gooch, including the notes purchased of F. A. Burton, referred to in complainant's bill; and that it is indebted to defendant administrator on account of the transactions set forth in the sum of $1,643.97, for which it tenders payment in full. It prays that judgment be rendered, etc.

Complainant's bill further alleges that the commissioners of Granville county, N. C., have assessed against the estate of W. H. Gooch taxes on said $80,300, and charged against said estate certain penalties for five years, aggregating $5,250, and have placed in the hands of defendant S. C. Hobgood, sheriff of said county, a list of said taxes and penalties, and that he has made demand on complainant as curator for payment thereof. It denies that W. H. Gooch had any personal property in Granville county, or subject to tax thereon, and avers that it has paid tax on said $80,300 to the state of Virginia, etc. Defendant S. C. Hobgood, sheriff, files his answer, submitting to such decree as the court may deem proper.

Complainant prays: (1) That a decree be made authorizing it to sell the note of Mrs. Annie W. Suhor and apply the proceeds to the payment pro tanto of the amount due it, as curator, by the defendant

Bank of Oxford, on account of the certificate of deposit or the balance due thereon. (2) That the Bank of Oxford be enjoined and restrained from prosecuting its suit in the superior court of Granville county against J. H. Gooch, administrator of W. H. Gooch, until the further order of the court. (3) That S. C. Hobgood, sheriff, be enjoined from interfering with the debt due it by the Bank of Oxford, etc. (4) For other and further relief, etc.

Defendant First National Bank of Oxford moves the court to dismiss complainant's bill: (1) For that the complainant, as curator, deriving its authority under and by virtue of the decree of the Virginia court, has no right or capacity to sue or maintain this suit in this court. (2) For that the facts stated in the bill do not constitute any cause of action or basis for relief by this court.

[1] Defendant, in its motion, in writing, sets forth other grounds for dismissal, based upon alleged facts which do not appear on the face of the bill, but which are supported by affidavit. The motion must be considered and decided upon the facts appearing on the face of the bill, including the exhibits attached and made a part thereof. Equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi); Hopkins, Fed. Eq. Rules (2d Ed.) 177.

[2] The bill is drawn to present complainant's controversy from several viewpoints. Counsel frankly concede that, unless the case can be brought within some one of the exceptions to the general rule, complainant cannot, as curator, by virtue of its appointment by the court of Virginia, bring or maintain this suit in the courts of North Carolina. The rule is very clearly stated by Judge Hook in Moore v. Petty, 135 Fed. 668, 68 C. C. A. 306:

"The general rule undoubtedly is that an executor or administrator, in his representative capacity, cannot maintain an action in the courts of any sovereignty other than that under whose laws he was appointed and qualified, without obtaining an ancillary grant of letters in the state where the action is brought, unless the right so to do is conferred upon him by the law of the forum."

See 13 A. & E. Enc. (2d Ed.) 916; 8 Standard Enc. of Procedure 748; Johnson v. Powers, 139 U. S. 156, 11 Sup. Ct. 525, 35 L. Ed. 112.

It is held in Hall v. So. Ry. Co., 146 N. C. 346, 59 S. E. 879, and cases cited in opinion by Justice Walker, that the laws of North Carolina do not permit a foreign administrator to sue in the courts of this state; nor does the statute permit a nonresident to be appointed administrator in this state. Revisal, § 5, subsec. 2. The jurisdiction of this court being invoked on account of diversity of citizenship, it follows that, unless the complainant could sue in the state court, it may not do so in this court. It is not suggested that complainant has any other right as curator that it would have as administrator. Its powers and duties are prescribed by Code Va. 1904, § 2534, which includes the power "to sue for, recover and receive all debts due to the decedent."

Complainant, conceding the general rule, contends that, in respect to the cause of action set out, it comes within the exception which is well stated by Judge Hook:

"Whenever the cause of action declared upon by the foreign executor or administrator is one which involves an assertion of his own right rather than one of the deceased, or which has accrued directly to him * * * rather than one of the deceased, or which has accrued directly to him through his contract or transaction, and was not originally an asset of the estate in his charge, he may maintain an action in another state for the enforcement thereof, although express authority to do so may not be found in a statute of the forum. The principle underlying this modification of the general rule is that, when the cause of action accrues directly to the executor or administrator, it is assets in his hands for which he may sue in his personal capacity, and, if he sues as executor or administrator, the words so describing him will be regarded as merely descriptive, and be rejected as surplusage."

See Croswell on Executors and Administrators, 158; 18 Cyc. 1240; Hare v. O'Brien, 233 Pa. 330, 82 Atl. 475, 39 L. R. A. (N. S.) 430, Ann. Cas. 1913B, 624.

The exception includes a case in which an administrator, having obtained judgment in a court of the state in which he was appointed, upon a debt due his intestate, may maintain an action on the judgment in the courts of another state, without taking out letters of administration in the state in which suit is brought. Talmage v. Chapel, 16 Mass. 71, cited by Judge Hook; Biddle v. Wilkins, 1 Pet. 690, 7 L. Ed. 315. This is based upon the theory that the original cause of action, accruing to the intestate, is merged into the judgment, and that this new cause of action vests in the administrator. The law, in respect to the effect upon the original cause of action, is stated by Mr. Freeman:

"A debt due the estate of a deceased person, if sued upon and recovered by an administrator, is, in law, the debt of him who recovers it, and in whose name the judgment is rendered. He holds the legal title subject to his trust as administrator. He may sue upon the judgment in his own name, without describing himself as administrator, and may therefore pursue the judgment debtor by an action on the judgment, in a different state from that in which the letters were issued, and there can scarcely be a doubt that a judgment rendered in favor of an administrator so merges the debt that it may be treated as his personal effects so far as to authorize him to maintain suit thereon in a foreign country, without there taking out letters of administration." Freeman on Judgments, § 217.

To what extent a judgment rendered in the courts of Virginia upon the certificate of deposit issued by defendant Bank of Oxford to W. H. Gooch, deceased, in an action brought by his administrator appointed by the court of that state, affects the rights of J. H. Gooch, administrator, in North Carolina, and the creditors of W. H. Gooch in that state, is not presented upon the motion to dismiss complainant's bill. It seems to be well settled that there is no privity between the Virginia and the North Carolina administrators; they derive their authority from different sovereignties and are governed by the laws of such states. 13 A. & E. Enc. 920; Stacy v. Thrasher, 6 How. 44, 12 L. Ed. 337; Johnson v. Powers, 139 U. S. 156, 11 Sup. Ct. 525, 35 L. Ed. 112. Hence it is held that a judgment recovered against the administrator of a deceased person in one state is no evidence of debt, in a subsequent suit by the same plaintiff, in another state. against an administrator, whether the same or a different person, or against any other person having assets of the deceased. Id.

The defendant J. H. Gooch, administrator of W. H. Gooch, does not join in the motion to dismiss, nor has he filed any answer herein.

[3] The first question presented upon this motion is whether, upon the face of the bill and the record of the circuit court of Mecklenburg county, Va., any judgment, in a legal sense, has been rendered in its favor against the defendant Bank of Oxford, which merged the original cause of action, vested in W. H. Gooch, deceased, by the certificate of deposit, into a new and independent cause of action in complainant, thus giving to it the right to maintain this suit. This invites a careful examination of the record, upon which no collateral attack can be made here.

Did the circuit court of Mecklenburg county, Va., have jurisdiction of the parties, and the subject-matter? Was the question of the liability of defendant Bank of Oxford to complainant curator and the estate of W. H. Gooch, deceased, upon the certificate of deposit, involved in the issue raised upon the pleadings in the bill of conformity pending in that court, and did the question of such liability become, by virtue of the judicial action of the court, res judicatum? If so, upon the authorities cited, the complainant may maintain its bill, and the court must deny the motion to dismiss, disposing of such contentions and issues as are open to defendant bank upon the coming in of the answer. If not, then complainant, from that viewpoint, has no status in this court, and defendant is not called upon to answer or litigate the questions suggested in the bill. Defendant bank denies that the Virginia court had jurisdiction of the parties or the subject-matter, or that it undertook to render any judgment vesting in complainant any new or independent cause of action, entitling it to sue in this court. It is manifest that the Bank of Oxford is not a party defendant to the suit; it is not named nor referred to in the bill, nor has any process issued, or been served, bringing it into the record. If it has become a party, so as to be barred by judgments or decrees rendered therein, such status is the result of its voluntary action, or the action of its duly authorized officers. It will not be seriously contended that its attorney had the power to make it a party to the record. If it has become such, it must be by the action of its president.

In the suit of complainant herein, as curator, are complainant and Margaret Corwin Radcliffe Gooch, Annie Wayne Suhor, and her husband, George L. Suhor, named as defendants? The bill sets out the the appointment of complainant, the death of W. H. Gooch, the relation of defendants, and the value and character of the estate; that no specific instructions are given complainant in the order of appointment; that complainant has taken into custody the personal estate; that when the investments were well secured complainant has deemed it best not to disturb them, and when they were not so complainant has collected them; that claims to the extent of $50,000 have been duly filed with complainant; that complainant has thought itself without authority to make payment, except of the funeral expenses and tax bills; the court is informed in regard to the character, etc., of the real estate, and its attention called to the language of the statute

under which it was appointed; the attention of the court is called to the litigation pending in the federal court between the widow and the daughter of Gooch. Other matters are referred to, having no connection with the debits or credits of the estate. In view of the premises, the court is asked to instruct complainant respecting its duties in regard to renting the real estate, disposition of money on hand, rate of interest, and place of deposit; what debts, if any, it shall pay at this time; what settlement it shall make of taxes; what action it shall take in regard to pending litigation, or such as shall be instituted, allowance of counsel fees, etc. See opinion of Whittle, P., in Gooch v. Old Dominion Co., 92 S. E. 846.

It is worthy of note that there is no suggestion of a purpose to bring into the suit the litigation between debtors and creditors of the estate. It is quite clear that the statute does not contemplate that the curator shall administer and settle the estate. He is to "take care that the estate is not wasted, before the qualification of an executor or administrator. * * * He may demand, sue for and recover all debts due to the decedent." There is no suggestion that he is to pay off or discharge debts. It must be assumed, although the bill does not so inform the court, that the bill was drawn with knowledge and in view of the fact that the defendant J. H. Gooch was the duly qualified administrator of the estate in North Carolina. It is alleged that Mr. Reeks was appointed commissioner to "take an account of the debts and liabilities of the estate." He filed quite an extended report of his proceedings in respect to the claim of the defendant bank against the estate of Gooch. It is made an exhibit. A condensed statement discloses that he gave notice in newspapers in Virginia and in Oxford, N. C., of the time and place at which he would sit, being Clarksville, Va., on August 14, 1917. He says that:

"On Saturday preceding the 14th day of August, he went to the town of Oxford, in Granville county. N. C., for the purpose, and for the purpose only, of ascertaining the status of the securities held by the estate of W. H. Gooch, being deeds of trust and mortgages upon the real estate in that county. * * * Knowing Mr. Hunt, and having heard that his bank held claims against Gooch's estate, but knowing nothing of their character or amount, he went to the bank, saw Mr. Hunt, and called his attention to the notice which he had published in a Richmond paper, and the Clarksville paper, and the Oxford Ledger, of the accounts to be taken in the town of Clarksville on the 14th day of August, deeming this an act of courtesy, and solely for the purpose of facilitating the execution of the decree and order of the circuit court of Mecklenburg. Mr. Hunt very courteously stated that he did hold notes against the estate of Gooch, and he made an exhibit of them to the commissioner."

He further states that he was satisfied there would be controversy about two notes held by the bank, amounting to about $9,000 each, and so stated to Mr. Hunt. "He stated to Mr. Hunt that, under the Virginia law and practice, he would have to produce his evidence of debt before the commissioner and have them allowed and reported upon by the court." He states that, later on, he found that Mr. A. A. Hicks represented the bank, and "he went to his office and stated substantially what has been hereinbefore detailed." The record made by Mr. Reeks further states that on August 14, 1917, Mr. Hunt and

Mr. Hicks appeared at Clarksville and filed a list of notes held by the defendant bank against the estate of Gooch, whereupon "the deposition of W. H. Hunt and others was taken before the commissioner in regard to the claim of the First National Bank of Oxford, N. C., against the estate of W. H. Gooch."

Mr. S. S. P. Patterson, Mr. H. M. Smith, Jr., counsel for estate of W. H. Gooch, and Mr. A. Hicks, counsel for the bank, were present. Considerable evidence was taken, not material to the decision of the motion to dismiss. It appears that this testimony was taken on August 15th, and the commissioner states that:

He "understood that the case, so far as it concerned the First National Bank of Oxford, N. C., involving the F. A. Burton notes, was closed and submitted to the commissioner for his consideration"; that counsel could file briefs and argue the case, etc.; that some days thereafter the commissioner heard that certain witnesses could give important testimony regarding the F. A. Burton notes; that he thought it his duty to apprise counsel on both sides of what he had learned; that he was requested to summon the witnesses—he does not say who requested him. On the 14th day of September, 1917, he was ready to proceed, when Mr. A. A. Hicks, "representing the First National Bank of Oxford, stated that 'we appear specially in this matter, at the suggestion and request of the commissioner, who made a visit to Oxford to see Mr. Hunt. We did not put any evidence on the stand, but simply offered some evidence of debt, which we had when Mr. Hunt was placed upon the stand by the curator or its attorneys.'"

He stated that:

"Demand having been made upon the First National Bank of Oxford for a settlement of the funds in the hands of the bank belonging to the estate of W. H. Gooch, deceased, the bank has accordingly made such settlement with J. H. Gooch, administrator of said estate, in the state of North Carolina, by delivering to the said administrator the notes marked paid, produced before the commissioner, and sending him a check for the balance due the estate after deducting the said notes, principal and interest, and the $50,000 heretofore advanced at said administrator's request. The bank has no claim against the estate, and withdraws the claim which it was requested to present at a former hearing, and the commissioner is requested to so report."

It was in consequence of this statement by Mr. Hicks that the commissioner made the statement in regard to his procedure. It is proper to state that the counsel for the curator made certain explanatory statements which are not material to the decision of this motion. They insisted that:

The Bank of Oxford "having submitted itself to the jurisdiction of said court for that reason alone, it is out of the question for said bank to make a settlement with the North Carolina administrator and ignore the Virginia court, and for itself ex parte to determine the legality of said notes after having knowledge of the fact that the notes were claimed to be spurious."

The commissioner filed his report, setting out the evidence and his conclusions of fact and of law, rejecting the four notes payable to F. A. Burton, amounting to approximately $20,000. No reference is made in the report to the certificate of deposit held by W. H. Gooch, for $80,300. The commissioner confined his investigation and report to the validity of the Burton and other notes held by defendant bank. Upon the filing of the report, the court rendered a decree,

confirming the conclusions of the commissioner. The decree contains the following:

"It appearing to the court that the curator holds a certificate of deposit of the First National Bank of Oxford. N. C., dated the 22d of December, 1914, for $80,300, and payable to W. H. Gooch, and it also appearing that said bank holds against said estate of Gooch valid claims * * * aggregating the sum of $8,950.15. * * * The four notes purporting to have been given by W. H. Gooch to F. A. Burton * * * now held by the said First National Bank of Oxford and asserted in this suit as an offset to said certificate of deposit, being expressly disallowed, the court doth direct the said curator to proceed to make settlement of the said matters with the said bank, allowing it credit for the sum of $8,950.15 only, with interest on the principal thereof from the 1st day of September, 1917, and taking such steps as it may be advised necessary and proper to accomplish such settlement and to collect the balance that may be so found due by said bank to the estate of said Gooch."

Does this record constitute a judgment, conclusive of the rights of the complainant and the defendant Bank of Oxford, vesting in complainant a new and distinct cause of action, upon which it may sue in this court? Did the Virginia court acquire jurisdiction of the Bank of Oxford? It is manifest that the conduct of the commissioner did not bring the bank within his jurisdiction; this is too plain for discussion. Was the president authorized by filing the claims before the commissioner, to submit the bank to the jurisdiction of the court? The defendant bank relies upon the case of Riverside Mills v. Menefee, 237 U. S. 189, 35 Sup. Ct. 579, 59 L. Ed. 910, and cases cited to sustain the contention that the president was not authorized to submit its rights to the jurisdiction of the Virginia court.

Laying this question aside for the present, and proceeding to the consideration of the question whether, giving to the action of the president its full legal import, it empowered the circuit court of Mecklenburg county, Va., to do more than instruct the complainant, curator in that suit, not to pay the notes held by the Bank of Oxford. They were not filed as an offset to the certificate of deposit. It seems that this decree would not be res judicata in an action against the bank by the North Carolina administrator. The reason of the rule which requires the assets of an intestate to be administered in the country or state of their situs is to prevent them from being drawn out of such state, to the injury and inconvenience of domestic creditors who may have contracted with the intestate on the faith of such assets. Each country claims the power to administer those parts of the effects that are within it, for the security of domestic creditors. A. & E. Enc. 948, citing Leake v. Gilchrist, 13 N. C. 73, and Carmichael v. Ray, 40 N. C. 365. The Bank of Oxford could not set up a voluntary settlement with the curator appointed by the Virginia court, in an action by the North Carolina administrator. In the cases holding such payment to the domiciliary administration valid, there was at the time, no ancillary administrator. It is held that, where an ancillary administration is had, the administrator of the domicile cannot withdraw or dispose of the ancillary assets by direct or indirect means until the ancillary administration is settled, whether debts are found in the ancillary jurisdiction or not.

There is nothing in the bill which suggests that the court will pass upon and adjudge the validity or amount of debts due the estate of Gooch. There is nothing in the testimony, or such portions of it, filed in the exhibit attached, referring to the certificate of deposit held by the estate of Gooch against the Bank of Oxford. It is not within the scope of the bill filed by it for instruction, in respect to the discharge of such duties. The commissioner evidently did not ,regard the question of the liability of the bank to the administrator of Gooch, as within the scope of his power or duty. While it is often difficult to fix accurately the subjects which are included within the issues, and adjudged by the court, it is well settled that:

"A judgment pronounced by a tribunal having no authority to determine the matter in issue is necessarily and incurably void, and may be shown to be so in any collateral or other proceeding in which it is drawn in question. * * * When the tribunal has not jurisdiction over the subject-matter, no averment can supply the defect; no amount of proof can alter the case; * * * neither the acquiescence of the parties, nor their solicitations, can authorize any court to determine any matter over which the law has not authorized it to act." Freeman on Judgments, § 120.

The circuit court of Mecklenburg did not, by its decree, undertake to do more than, upon the facts set out and the relief prayed, it was called upon to do—instruct the complainant, curator, in respect to its duty. It did not attempt to render a judgment or decree upon which process could issue for its enforcement; it simply said to the complainant that it should not pay, or allow as a set-off, the Burton notes held by defendant bank, but should proceed to collect the certificate of deposit, subject to the credit allowed by the commissioner. This, in no manner, affected or interfered with the liability of the bank to be sued in the North Carolina court, or the right of the administrator in that state to collect the certificate. These rights are fixed by the laws of North Carolina, and may not be disturbed, or changed, by the courts of Virginia. The rule generally adopted throughout the states is that an administrator appointed in one state has no power virtute officii over property in another. No state need allow property of a decedent to be taken without its borders until debts due to its own citizens have been satisfied. Baker v. Baker, Eccles & Co., 242 U. S. 394, 37 Sup. Ct. 152, 61 L. Ed. 386. So it is said in McLean v. Meek, 18 How. 16, 15 L. Ed. 277:

"These administrators were independent of each other; the respective administrators represented Meek, the deceased intestate, by an authority co-extensive only with the state where the letters of administration were granted, and had jurisdiction of the assets there, and were accountable to creditors and distributees according to the laws of the state granting the authority. No connection existed, or could exist, between them, and therefore a recovery against the one in Tennessee was no evidence against the other in Mississippi."

In Vaughan v. Northup, 15 Pet. 1, 10 L. Ed. 639, Judge Story says:

"Every grant of administration is strictly confined in its authority and operation to the limits of the territory of the government which grants it, and does not de jure extend to other countries. It cannot confer, as a matter of right, any authority to collect assets of the deceased in any other state."

Upon a careful consideration of the entire record in the suit of complainant in the circuit court of Mecklenburg county, Va., I am of the opinion that the court had no jurisdiction to render a judgment on the certificate of deposit, which entitles complainant, under the exception to the general rule limiting its power, to sue in its representative capacity, in courts of other states, nor to vest in it a new cause of action, upon which it may sue in its individual capacity. I am further of the opinion that the court did not undertake to render such a judgment.

[4] Complainant insists that, however this may be, defendant Bank of Oxford has, by its conduct, entered into contracts relating to the matters in controversy with it, independent of its relation to the estate of Gooch, which it may, by reason of diversity of citizenship, have enforced in this court. This contention is based upon the dealings had with defendant in regard to Mrs. Suhor's note. This transaction began by the loan by defendant bank of $50,000 to Mrs. Suhor to enable her, as the sole distributee of W. H. Gooch, to comply with the terms and provisions of the contract made by her father. It is manifest that the order which she gave on J. H. Gooch, administrator, was to be paid by him from the proceeds of the certificate of deposit, or used by him in making settlement with the bank. It was practically an application of that asset pro tanto. It was not within the power of the defendant bank to make any contract with complainant concerning the certificate of deposit, or interfering with its collection and administration by and through the North Carolina administration. The only effect of the deposit of Mrs. Suhor's note with complainant was to enable it to carry out the arrangement through J. H. Gooch, administrator, whose right and duty it was to collect the certificate, pay the debts of Gooch due to North Carolina creditors, and pay over to Mrs. Suhor the balance, using her note as a voucher in settlement with her. The transaction between complainant did not change this status. The defendant bank has not, by its letter, or otherwise, made itself the debtor of the complainant as curator, or in its individual corporate capacity, so as to affect the right of J. H. Gooch, administrator. Complainant does not own or hold Mrs. Suhor's note as curator; the possession of the note has no connection with its administration of that office. It suggests that it is necessary to invoke the aid of this court to enable it to sell the Suhor note. It does not allege that Mrs. Suhor, or J. H. Gooch, administrator, has refused to carry out the arrangement made with the Bank of Oxford, to whose rights, in that respect, complainant has succeeded. This may be done by the surrender of the note to Mrs. Suhor, and the execution by Gooch, administrator, to the bank of a receipt for that amount, on account of the certificate of deposit and a receipt by Mrs. Suhor to Gooch, administrator. Every one concerned is, so far as appears, ready, able, and willing to carry out in good faith this agreement. A decree could be made in this cause to that effect, if Mrs. Suhor was, or comes in and makes herself, a party.

[5] Complainant, however, insists that, having a status in this court for one purpose, it may invoke its aid to give force and effect to the

252 F.—40

judgment which it alleges it obtained in the circuit court in Virginia. It is true that, if a court of equity takes jurisdiction of a controversy for one purpose, it will dispose of all such matters in controversy, so as to render complete relief. This doctrine, with its limitations, as imposed by the American courts, is stated and discussed by Prof. Pomeroy. Equity (3d Ed.) § 223 et seq.

Assuming that complainant may come into this court for the purpose of having a decree to foreclose the lien upon the collateral held by it, and bring such security to sale, it would by no means follow that this court would draw within its jurisdiction controversies based upon matters having no connection with the deposit of the collateral, or pass upon claims asserted in a representative capacity and entirely unrelated to the subject of the primary equity.

The bill will be dismissed as to all matters alleged regarding the claims of complainant, either as curator or individually, to the certificate of deposit issued by the defendant Bank of Oxford to W. H. Gooch for $80,300. If complainant so desires, Mrs. Suhor may be made party defendant, and a decree be made executing the agreement between her, the Bank of Oxford, and J. H. Gooch, administrator, in regard to the settlement of Mrs. Suhor's note of $50,000. The motion for injunction, restraining the defendant Bank of Oxford from prosecuting its suit against J. H. Gooch, administrator, in the superior court of Granville county, is denied.

[6] In regard to the prayer for injunction against defendant, S. C. Hobgood, sheriff, it is sufficient to say that it does not appear that he has attempted, or is threatening or has any power to enforce the collection of the tax assessed by the commissioners against the estate of W. H. Gooch from, or interfere with, any property held by complainant as curator or otherwise. If he was doing so, the remedy is manifestly not in this jurisdiction. It is the duty of the North Carolina administrator to defend the property in his keeping against this claim. There is no suggestion that he will fail to discharge his duty. The bill, as to him, will be dismissed.

A decree will be drawn providing that, unless complainant desires to bring Mrs. Suhor in and have the decree suggested, within 10 days, the bill will stand dismissed at complainant's cost.