**GRIFFIN v. CHICAGO UNION STATION CO. et al.**

**No. 14368.**

District Court, N. D. Illinois, E. D.

July 31, 1936.

Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., for plaintiff.

Michael L. Igoe, U. S. Dist. Atty., and Leo J. Hassenauer, First Asst. U. S. Dist. Atty., both of Chicago, Ill., for National R. R. Adjustment Board, First Div.

Theodore Schmidt, of Chicago, Ill., for Chicago Union Station Co.

J. Kendall S. Mitchell, of Chicago, Ill., for defendants Hodges, Nord, Atwater, Murray, Bates, Barrett and Kovecheff.

BARNES, District Judge.

The plaintiff, Griffin, is a switch tender in the employ of Chicago Union Station Company and, as an employee of said company, held certain seniority rights. Defendant Chicago Union Station Company is a carrier engaged in interstate commerce by railroad. The defendant National Railroad Adjustment Board, First Division, is a board established by and pursuant to the authority of an Act of Congress of May 20, 1926 (chapter 347, § 3, 44 Stat. 578), as amended by the Act of Congress of June 21, 1934 (chapter 691, § 3, 48 Stat. 1189 [45 U.S.C.A. § 153]). Other defendants are the members and secretary of said National Railroad Adjustment Board, First Division, and certain other switch tenders, who were affected by the order of the National Railroad Adjustment Board, First Division, hereinafter referred to, and who will be affected by any decree made in this case.

Plaintiff, Griffin, was for a long time employed as a switch tender and his name appeared on the switch tenders' seniority list. Then, he was transferred to other work, where he remained for a period of ten years. Whether the other work was such as was ordinarily performed by switch tenders is one of the questions in the case. During this period the plaintiff's name did not appear on the switch tenders' seniority list. At the end of the ten-year period, the position which the plaintiff then held was abolished, his name was restored to the switch tenders' seniority list, with seniority dating from his first employment as a switch tender, and, because his name was high on the seniority list, he immediately went to work as a switch tender. The restoration of plaintiff's name to the switch tender's seniority list, with seniority dating from his first employment as a switch tender, resulted in plaintiff's displacing other switch tenders. These other switch tenders either are, or are represented by, defendants in this case.

After the plaintiff's name was restored to the switch tender's seniority list and plaintiff was put to work as a switch tender, complaint was made by and on behalf of the switch tenders who had been displaced to the National Railroad Adjustment Board, First Division. That board noticed the Chicago Union Station Company to appear. That company did appear and hearing was had before the board. The hearing resulted in depriving the plaintiff of seniority rights dating from his first employment as a switch tender, which rights had been accorded him by the Union Station Company, and in the restoration of the other switch tenders to the places which they respectively held on the seniority list prior to the plaintiff's restoration thereto.

The question as to the place which the plaintiff should hold on the switch tenders' seniority list is of great consequence to the plaintiff because if he does not have the seniority which was accorded him by the Union Station Company and is compelled to take the seniority accorded him by the Railroad Adjustment Board, First Division, he will, because of the shortage of employment, be without employment. The decision is likewise of great importance to the other switch tenders who were displaced by plaintiff's restoration to a high place on the seniority list. One of these men will be without employment because of such restoration, and the others will be reduced one grade.

Plaintiff was not notified of the hearing before the Railroad Adjustment Board, First Division. On behalf of the plaintiff it is contended that the order of the board, rendered without notice to him, deprives him of property without due process of law, in violation of the Fifth Amendment to the Federal Constitution. On behalf of the National Railroad Adjustment Board, First Division, and the other switch tenders who are parties defendant, it is contended that no such notice was necessary. Among other things, it is said that the controversy was between the Chicago Union Station Company and the union, and that the plaintiff was not involved therein. Further, it is said that the plaintiff was represented by the union at the hearing. The court is unable to agree with either of these contentions. The court is clearly of the opinion that the plaintiff was involved in the controversy. On the other point, the undisputed evidence is that the union, at the hearing, favored the contentions of the other switch tenders and opposed the alleged rights of the plaintiff.

The court is of opinion that the seniority rights, which had been accorded to the plaintiff by the Union Station Company and which he 'ld prior to the decision of the National Railroad Adjustment Board, First Division, were property within the meaning

724

of the Fifth Amendment to the Federal Constitution. The statement of the court in the case of Truax v. Raich, 239 U.S. 33, at pages 38, 39, 36 S.Ct. 7, 9, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283, is enlightening:

"The right to earn a livelihood and to continue in employment unmolested by efforts to enforce void enactments should similarly be entitled to protection in the absence of adequate remedy at law. It is said that the bill does not show an employment, for a term, and that under an employment at will the complainant could be discharged at any time, for any reason or for no reason, the motive of the employer being immaterial. The conclusion, however, that is sought to be drawn, is too broad. The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will. * * *

"It sufficiently appears that the discharge of the complainant will be solely for the purpose of meeting the requirements of the act and avoiding threatened prosecution under its provisions. It is, therefore, idle to call the injury indirect or remote. It is also entirely clear that unless the enforcement of the act is restrained the complainant will have no adequate remedy, and hence we think that the case falls within the class in which, if the unconstitutionality of the act is shown, equitable relief may be had."

The court is further of the opinion that the proceedings before the National Railroad Adjustment Board, First Division, was wanting in due process, for the reason that no notice was given to the plaintiff of the hearing. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565; Simon v. Southern R. Co., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492; Riverside & Dan River Cotton Mills v. Menefee, 237 U.S. 189, 35 S.Ct. 579, 59 L.Ed. 910.

The court concludes that "the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000 and (a) arises under the constitution or laws of the United States." Accordingly, the court has jurisdiction.

It is further concluded that the order of the National Railroad Adjustment Board, First Division, herein complained of, was void because the proceedings wherein it was rendered and on which it was based were wanting in "due process" because of lack of notice to the plaintiff. The enforcement of said order should be perpetually enjoined.

The conclusion at which the court has arrived is apparently different from that at which Judge Atwell arrived in a somewhat similar case. Lane v. Union Terminal Co. (D.C.) 12 F.Supp. 204.

Counsel for the plaintiff may prepare, and, on notice, present drafts of findings of fact, conclusions of law, and a decree.