AMERICAN FIRE PREVENTION BUREAU, Inc., v. AUTOMATIC SPRINKLER CO. OF AMERICA.

District Court, S. D. New York.
April 24, 1941.

Beals & Nicholson, of New York City (Wilber W. Chambers and John D. Beals, Jr., both of New York City, of counsel), for plaintiff.

Whitman, Ransom, Coulson & Goetz, of New York City (Colley E. Williams and Forbes D. Shaw, both of New York City, of counsel), for defendant, appearing specially, etc.

LEIBELL, District Judge.

Defendant, Automatic Sprinkler Company of America (hereinafter called the "Company"), appearing specially, has moved pursuant to Rules 12(b) and 81(c), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, for an order vacating and setting aside the service of the summons and complaint herein and dismissing the above-entitled action, upon the ground that the court has no jurisdiction over the person of the defendant.

The complaint herein alleges that the action is brought by the plaintiff, a New York corporation, against the defendant, a Delaware corporation, to recover $9,579.59 claimed to be due plaintiff under written agreements entered into between the parties on March 8, 1928.

The present action was originally instituted in the Supreme Court of the State of New York, New York County. The summons and complaint were served on J. A. Coakley, president of the defendant, at the Biltmore Hotel, New York City, on December 5, 1940. Thereafter on December 20, 1940, the defendant, appearing specially for such purpose, filed a petition and bond for the removal of the action from said State Court to this Court. On January 18, 1941, the action was removed and a certified copy of the record therein filed in this Court.

Defendant contends in its moving papers that it is a foreign corporation, not doing business in the State of New York and therefore is not subject to the jurisdiction of this Court in an action in personam.

In opposition, plaintiff contends (1) that a finding of fact contained in a decision in prior litigation between plaintiff and defendant in the New York State Court to the effect that defendant has "a place of business in the Borough of Manhattan, City of New York" is "res judicata" and is binding upon the defendant in this action; (2) that the contracts in suit, covering a period of fifteen years, required the defendant to do business in New York in the performance of certain provisions thereof, and that defendant has been and still is doing business in New York City; (3) that even if defendant does its business in New York through a wholly owned subsidiary, the said subsidiary is completely dominated by defendant and acts as a mere "agent, dummy or decoy" for defendant.

With respect to plaintiff's contention (1) supra, it appears that on January 27, 1939, an action was instituted by plaintiff in the Supreme Court, New York, against the defendant for a breach of provisions of the contracts here in question. The defendant appeared, answered and counterclaimed in that action and no question was raised whether or not defendant was doing business in New York State. The trial court in that action granted judgment in favor of the plaintiff and made a finding that defendant had a place of business in the State of New York, to wit, New York City. The judgment was affirmed on appeal. I am of the opinion that inasmuch as the defendant voluntarily appeared and answered in the prior litigation in the New York State court, in fact counterclaimed, the question of whether or not defendant was doing business in this State was not put in issue or litigated. Consequently the finding by the state court that defendant was doing business in New York cannot be held to be "res judicata". Donahue v. New York Life Ins. Co., 259 N.Y. 98, 102, 181 N.E. 62; Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 11, 60 S.Ct. 215, 84 L.Ed. 537. Defendant also explains its voluntary submission to the jurisdiction of the New York Supreme Court in that case by stating that it hoped thereby to avail itself of a ruling of the Appellate Division on similar agreements in a suit entitled American Fire Prevention Bureau, Inc., v. Rockwood Sprinkler Co. of Massachusetts, 244 App. Div. 423, 279 N.Y.S. 368.

In contention (2) supra, plaintiff asserts that defendant actually has been doing business in the State of New York. Defendant through J. A. Coakley, its president, in his first affidavit herein, sworn to January 18, 1941, stated that:

"The defendant, Automatic Sprinkler Company of America, is a foreign corporation, to wit, a corporation organized and existing under the laws of the State of Delaware, and having its principal office and place of business located in the City

of Youngstown, State of Ohio. Its business consists in the holding of letters patent and the manufacturing of patented devices used in the sprinkler industry which it sells to its wholly-owned subsidiary, Automatic Sprinkler Corporation of America, a Delaware corporation engaged in the business of furnishing and installing sprinkler systems, and to other independent sprinkler companies which are licensed to use its devices. In addition to Automatic Sprinkler Corporation of America, the defendant owns all of the capital stock of Automatic Finance Corporation and Automatic Sprinkler Company of Canada, Ltd. Although the defendant and its subsidiary corporations have, in many instances, the same persons as officers and directors, each of these subsidiary corporations maintains a separate and complete organization, regularly holds its necessary stockholders' and directors' meetings, keeps its own books of account, pays its own officers and employees with its own funds, and otherwise functions as a distinct corporate entity.

"Since its incorporation under the laws of the State of Delaware on December 16, 1922, the defendant, Automatic Sprinkler Company of America, has never done business in the State of New York and has never sought or obtained any authority to do business in said State. It has had no office or place of business in said State, nor maintained an agency for the transaction of business within said State. It has taken no orders for goods of any kind, has made no sales or purchases, has had no telephone or listing in any telephone directory, nor had its name on any door, window or other place within said State. It has no bank account and owns no property in said State. Moreover, none of the officers and directors of the defendant resides or has his office in said State and the defendant has never been in any way amenable to the service of process within said State."

It is true that these statements were later qualified (see affidavit of Coakley sworn to March 21, 1941) in that defendant concedes that between 1922 and 1926, it did maintain an office in the City of New York and had a bank account and securities in New York at that time. However, defendant asserts that in 1926 it discontinued the New York office and transferred its business to the State of Ohio and since then "defendant has had no office and has done no business in the State of

New York, nor have any meetings of the defendant's directors or stockholders been held within said State".

In order to sustain its contention that defendant is doing business in New York, plaintiff relies mainly upon the terms of the agreements of March 8, 1928 (the contracts sued upon herein) ; and upon defendant's performance under those contracts; and on certain checks, correspondence and the like.

There were two agreements executed by the parties on March 8, 1928. The "license agreement" provided that defendant should have a non-exclusive license to sell, and that plaintiff would manufacture and sell to defendant and its affiliates and licensees, certain of plaintiff's patented products (Derby Fire Sentinels and Derby Electric Releases) at certain prices to be agreed upon and in consideration for that arrangement and for other considerations, defendant guaranteed plaintiff that the sales made under the license agreement and a so-called "Panel Agreement", of even date, would result in a profit of $5,000 a year to plaintiff. The sales in fact did not produce this anticipated profit and plaintiff is suing defendant under its guarantee for the difference between the profit actually realized and the guaranteed profit for the years ending March 7, 1939, and March 7, 1940. The former suit in the New York Supreme Court, in which plaintiff was successful, was on the same guarantee for the amount of the deficiency for the year ending March 7, 1938.

The "license agreement" in paragraph 22nd contains a statement that the principal consideration for the license therein granted was the execution by the parties of a so-called "Panel Agreement" of even date. The plaintiff was the owner of certain patents for "Electric Signal Wiring Systems", and "Self Supervised Electric Systems" relating to closed circuit supervisory panels and systems of wiring, which were the subject of the "Panel Agreement" between plaintiff and defendant. Under said agreement the defendant agreed that it and its affiliates would buy exclusively from plaintiff all electric alarm panels of the closed circuit type required under any contract it might get for fire extinguishing sprinkler systems. Plaintiff agreed to manufacture and sell these panels to defendant, to be used in the performance of contracts of installation, but not for resale, except to licensees of defendant to

be used by them in connection with the installation of devices manufactured by defendant under certain patents owned by defendant (Paragraph Seventeenth of License agreement). The agreements, called the "Panel" and "License" contracts, are annexed to the motion papers herein.

The Panels were to be manufactured by the plaintiff and delivered F. O. B. New York City by plaintiff for shipment to defendant (Paragraph Second of Panel Agreement, Exhibit 2). The Releases and Panels were to be inspected by defendant in New York City (Paragraph Tenth of Panel Agreement and Paragraph Sixteenth of License Agreement, Exhibit 1). Plaintiff contends that these inspections were made in New York City by defendant. It is conceded that several installations of these panels and connected equipment were completed in New York City, but plaintiff and defendant are at issue as to who did actually install these panels and inspect the completed jobs as provided for in the agreement (see Paragraph Sixteenth of License Agreement). In support of its claims that this inspection work was performed by defendant, plaintiff has annexed to its papers (Exhibits 5 and 6) two of the inspections and acceptance receipts signed on behalf of said defendant company. Plaintiff also states that it stored and held at its factory in New York, awaiting instructions, some of the equipment manufactured for defendant's account.

On the other hand, defendant asserts that all business conducted in New York State has been performed by its subsidiary, Automatic Sprinkler Corporation (hereinafter referred to as the "corporation"), a corporation licensed to do business in New York State. Defendant states that the very agreements relied upon by plaintiff evidence the fact that the parties contemplated the purchase and installation of plaintiff's devices by the defendant's affiliated companies and sub-licensees and, for this reason, the guaranteed minimum amount payable under the terms of the Panel and License Agreements was expressly made dependent upon plaintiff's sales of its products to the defendant and its affiliated companies and sub-licensees. A reading of the said agreements sustains the defendant upon this point (see paragraphs First, Seventeenth, Eighteenth and Twenty-First of Panel Agreement; Paragraph Seventeenth of License Agreement).

In addition defendant states that in March, 1928, the date the agreements in question were executed, the defendant was a holding company owning patents and also a manufacturer of certain Rate-of-Rise apparatus (Coakley reply affidavit pp. 7–9). Defendant's affiliate, the "corporation", was defendant's sales and installation subsidiary for some years prior to 1928 when the agreements herein were executed (Van Houten's reply affidavit pp. 1, 2), and its business of furnishing and installing automatic spinkler systems had been, was and still is essentially that of a construction company. The electric releases, the panels and the rate-of-rise apparatus were all part of the sprinkler installations made by the construction contractor, the "corporation", and naturally would be inspected and checked by the contracting "corporation". Likewise, the "corporation" would inspect and test for defendant installations made by independent licensees.

Defendant admits that most of the "panel equipment" was installed in New York City but maintains that this equipment was purchased and installed by defendant's affiliate "corporation" (Coakley reply affidavit, pp. 5, 6) and that defendant's purchases from plaintiff were limited to the purchase of "electric releases" for shipment to defendant's manufacturing plant in Youngstown, Ohio.

From a reading of the moving papers it appears that plaintiff did recognize the distinction between defendant "company" and its affiliated "corporation". It appears that defendant's orders for plaintiff's "electric releases" were placed separately from the "corporation's" orders for plaintiff's "panel equipment" (see Exhibits 10 and 14 annexed to Derby affidavit). Plaintiff regularly accepted the "corporation's" panel orders, billing the "corporation" therefor and accepting its checks in payment thereof, and at the same time billed and accepted payment from the defendant "company" for purchases of the electric releases (see Exhibits A–H annexed to Coakley affidavit of March 21, 1941).

No real significance is to be attached to the fact that plaintiff has several inspection receipts signed apparently on behalf of the defendant "company" although the equipment was bought and paid for by the "corporation" (Exhibits 5, 6, 11 annexed to Derby affidavit; Exhibits C and D annexed to Coakley affidavit of March 21, 1941). The similarity of the

names of defendant "company" and its affiliate "corporation" would give rise to confusion upon the part of workmen inspecting and installing panels, especially when they attempted to abbreviate the corporate names. Likewise the occasional misuse of the letterheads of defendant "company" and its affiliate "corporation" carries little weight in the determination of whether or not defendant was doing business in New York. See, Raisler Sprinkler Company v. Automatic Sprinkler Company of America,[1] decided December 11, 1931, by Judge Caffey of this Court, who commented on this fact and held the defendant was not doing business in this state.

■ From a consideration of all the affidavits and exhibits submitted on this motion, I am of the opinion that plaintiff has not overcome the unequivocal statement and proof of defendant that it has not been doing business in New York for more than fourteen years but that its affiliate "corporation" has been doing the inspecting and installation work under the provisions of the agreements herein sued upon. Compare York Manufacturing Co. v. Colley, 247 U.S. 21, 24, 25, 38 S.Ct. 430, 62 L.Ed. 963, 11 A.L.R. 611.

■ To subject a foreign corporation to legal process, it must be conducting business within the state with some degree of permanence and continuity. Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517; Riverside & Dan River Cotton Mills v. Menefee, 237 U.S. 189, 35 S.Ct. 579, 59 L.Ed. 910; Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372; Tauza v. Susquehanna Coal Co., 220 N.Y. 259.

As the Supreme Court said in People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, at page 87, 38 S.Ct. 233, at page 235, 62 L.Ed. 587, Ann.Cas.1918C, 537: "The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted."

Plaintiff also argues [contention (3) supra] that assuming the defendant is not itself doing business in New York State, defendant dominates and controls its affiliate corporation which does business in this state and has been duly authorized to do so, and consequently defendant is found here for the purposes of process. I am constrained to hold against the plaintiff on this contention. In Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 251, 69 L.Ed. 634, the Supreme Court in a similar situation stated: "Congress has not provided that a corporation of one state shall be amenable to suit in a federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. Compare Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 177, 178, 43 S.Ct. 312, 67 L.Ed. 596. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by Conley v. Mathieson Alkali Works, 190 U.S. 406, 409, 411, 23 S.Ct. 728, 47 L.Ed. 1113, Peterson v. Chicago, Rock Island & Pacific R. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841, and People's Tobacco Co., Ltd., v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537."

■ In the case at bar the separate entities of defendant and its affiliate corporation have been preserved even in the agreements sued upon herein. Applying the principles of the above cited cases to the present case, I conclude that the defendant was not jurisdictionally present in the State of New York when its president was served with the summons in this suit. The motion of defendant for an order vacating and setting aside the service of the summons and complaint herein and dismissing this action on the ground that the court has no jurisdiction over the person of the defendant is granted.

Settle order on notice.

---

[1] No opinion for publication.