## UNITED STATES v. SCOPHONY CORPO-RATION of AMERICA et al.

District Court, S. D. New York.

Oct. 30, 1946.

Edwin Foster Blair, of New York City, for defendant Scophony, Limited.

Joseph B. Marker, Sp. Atty., of New York City, for the United States.

Simpson, Thacher & Bartlett, of New York City, for defendants Television Productions, Inc., Paramount Pictures, and Paul Raibourn.

Mudge, Stern, Williams & Tucker, of New York City, for defendants Earl G. Hines and General Precision Equipment Corporation.

Joseph O. Ollier, of New York City, for defendants Arthur Levey and Scophony Corporation of America.

CONGER, District Judge.

The Defendant, Scophony, Limited, moves to quash service of process and dismiss the complaint herein upon the ground that it is a corporation organized under the laws of Great Britain, not subject to the jurisdiction of this Court.

The action is brought pursuant to Section 4 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 4, against five corporate defendants, including the movant, and three individuals to restrain continuing violations of Sections 1 and 2 of the Act, 15 U.S.C.A. §§ 1 and 2. The complaint charges the defendants with combining and conspiring to monopolize and restrain interstate and foreign trade in products, processes, patents and inventions useful in television and allied industries.

Service of process was effected in New York City on December 20, 1945 by leaving a copy of the summons and complaint with defendant Arthur Levey, who is a Director of Scophony, Limited. On April 5, 1946 one W. G. Elcock, also a Director of Scophony, Limited, was served while visiting this country.

Section 12 of the Clayton Act, 15 U.S.C.A. § 22, pursuant to which venue is established and jurisdiction acquired in suits of this type, provides as follows: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; *and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.*" [Italics added.]

It may be noted that the emphasized portion of the section relating to jurisdiction is concerned here; and the main problem is, therefore, whether the defendant, Scophony, Limited, not being an "inhabitant" of this district, is "found" here.

Although there have been numerous decisions rendered in application of this section, the great majority of them relate to domestic corporations (corporations organized within the United States) rather than alien corporations, as here.

Recently, Judge Leibell of this Court considered the instant problem in a suit analogous to the present one (United States v. United States Alkali Export Association et al., D.C.,),[1] and he held that a British corporation which owned the entire capital stock of an American corporation functioning within the jurisdiction of this Court was "found" here within the meaning of Section 12. He concluded that the activities of the American corporation on behalf of the parent company warranted the finding that the former was merely an "agency subsidiary" of the British company.

In general, a corporation is "found" within a given jurisdiction if it there does business "Of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted." Peoples Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 235, 62 L.Ed. 587, Ann.Cas.1918C, 537; United States v. Aluminum Co. of America, D.C.N.Y.1937, 20 F.Supp. 13; Haskell v. Aluminum Co. of America, D.C.Mass.1926, 14 F.2d 864. An examination of the cases indicates that the concept expressed as "found" is identical with the more familiar "doing business."

The affidavit submitted by the Government in opposition to this motion contains a detailed statement of the various activities of movant in this jurisdiction. Much of this activity occurred prior to the signing of the so-called "basic agreements" with the other defendants in 1942.

Defendant Scophony, Limited (hereinafter referred to as "Limited") has its office in the City of London, England. It is in the business of manufacturing and selling television apparatus and is the owner and licensor of inventions purporting to cover, among other things, television reception and transmission systems.

In the Spring of 1939, Limited manufactured and placed on the market in England several commercial television sets. After the outbreak of the war with Germany in September, 1939, the British Broadcasting Corporation stopped the television broadcasts.

In 1940, Limited sent some of its personnel and various television equipment to this country; it maintained an office in New York City from 1940 to 1941; it demonstrated its product here; it leased one of its television sets to a theatre company as a result of which a set was installed in the Rialto Theatre in New York City. In general, Limited was actively engaged in placing its product in the American market, inasmuch as the English market was closed to it because of the war. In those early years, 1940 and 1941, and perhaps for part of 1942, Limited's business here was of such a character that one might very well infer that it had subjected itself to the local jurisdiction and was present here at

[1] No opinion for publication.

that time by its duly authorized agents upon whom service of process could be made.

Unless there was a continuity of such activities down to the present, however, such course of conduct is of no aid in the determination of this motion. What we are interested in is the business conduct of this defendant in this jurisdiction at the time process in this action was served upon it or within a reasonable time before that.

There is no question but that these business activities which I have referred to ceased prior to the time this defendant entered into the "basic agreements."

These agreements were executed on July 31, 1942 and August 11, 1942. In substance, they provided for the creation of a new corporation, the Scophony Corporation of America (hereinafter called "SCA"), to which Limited sold all its equipment within the United States, and all its present and future patents. SCA, in turn, gave exclusive licenses for the manufacture and sale of products under the Scophony inventions in the Western Hemisphere to defendants General Precision Corporation and Television Products, Inc. The exclusive licensees agreed to pay royalties to SCA on all products that they might produce under the Scophony inventions, and SCA agreed to transmit to Limited fifty per cent of all royalties that it received from the licensees.

The capital structure of the new corporation, SCA, was to consist of 1,000 "A" shares and 1,000 "B" shares. The "B" shares were allotted to the American interests, General Precision Equipment Corporation and Television Productions, Inc., a wholly-owned subsidiary of Paramount Pictures, Inc. The "A" shares were allotted to the British interests, principally Limited.

The "A" shares are entitled to elect three-fifths of the Board of Directors of SCA and to elect the President, Vice-President and Treasurer of the new corporation. Since the creation of SCA the representatives of the "A" shares have been elected by Limited.

The "B" shares are entitled to elect two-fifths of the Board of Directors of SCA and also the Secretary and Assistant Secretary.

The Government contends that these agreements provide for the division of world markets in the products covered by the Scophony inventions, particularly those relating to television. Limited retained the Eastern Hemisphere, including England, as its exclusive territory for the manufacture and sale of products covered by Scophony inventions.

The Western Hemisphere, including the United States, became the exclusive territory of SCA or its two exclusive licensees for the manufacture and sale of products under the Scophony inventions.

It is apparent from these provisions that Limited exerted the major control over SCA. Defendant Levey, who is President and a Director of the American Corporation is also a Director of Limited.

However, it is well settled that a parent corporation does not "do business" in a given jurisdiction merely because of the presence there of its subsidiary without some further factual basis for concluding that the parent has injected itself into the jurisdiction by its conduct in relation to the subsidiary, or that the subsidiary is acting solely as an agent, as was the situation in United States v. United States Alkali Export Association, supra. Cannon Mfg. Co. v. Cudahy Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Consolidated Textile Corporation v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047; Amtorg Trading Corporation v. Standard Oil Co. of California, D.C.N.Y.1942, 47 F.Supp. 466; American Fire Prevention Bureau v. Automatic Sprinkler Co. of America, D.C.N.Y. 1941, 42 F.Supp. 220. And there is no evidence, except possibly for the fact that Limited received fifty percent of the royalties earned by SCA, that SCA stood any differently than any ordinary subsidiary corporation, nor is there any indication that it acted merely as an agent for Limited. It is true that SCA did act for Limited in the purchase of certain materials and equipment in the United States, but it appears from the papers that this occurred on occasion, and not as a frequent and common practice of SCA.

The Government asserts that Limited is "found" here by reason of the activities of its agents, especially Levey, and others.

Levey was the prime negotiator for Limited of the "basic agreements" to which the Government has directed its attack. He consulted with Limited with respect to the proposed modifications of the "A" stock allocations, and which proposal resulted in the new allocations set forth in the agreement of February 4, 1943, whereby Limited received two-thirds of the "A" shares. He kept Limited advised about the negotiations with regard to the employment by SCA of an inventor, Dr. Rosenthal. He carried out instructions and kept Limited advised in connection with the disputes which subsequently ensued between the "A" and "B" Directors. In order to assist him in resolving these difficulties, Limited gave him a power of attorney, dated March 26, 1945, authorizing him to vote Limited's shares in SCA.

Numerous others were authorized by Limited to act in its behalf in these disputes, including W. G. Elcock, who travelled to this Country for the purpose, James L. Fly and John Sloan, attorneys, Robert Boothby, a British member of Parliament and Commander Arthur Mallet, an English officer.

While a successful settlement of these disputes might inure to the benefit of Limited, still the disputes were concerned with the conduct of the business of SCA and not that of Limited.

Assuming the truth of the allegations in the complaint with respect to Limited's business, i. e. that it is engaged in the manufacturing, selling and licensing of television apparatus, it would seem that none of the activities of Limited's agents were concerned with the ordinary business of Limited. These agents were engaged in protecting the interests of their principal in SCA.

The Government finally argues that the conduct required to hold an alien corporation under Section 12 may vary from that required to hold a foreign corporation. If by this the Government means that there is one rule which applies to alien corporations and another to foreign cor-

porations it is clearly in error. The cases cited by the Government do not support this theory. All of them where pertinent apply the rule as I have heretofore stated it, and make no such distinction, nor do any of the other cases which I have read.

I am not unmindful of the effect of my holding here. However, that cannot determine my judgment. I cannot make the rule to fit the case. I can only apply the rule to the facts and having done so announce the result.

This I have done, and although the result may be unfortunate as far as the Government is concerned, I can only conclude that Limited was not found within the jurisdiction of this Court at the time of service of process, and the motion to quash the service and dismiss the complaint must be granted.

Submit order on notice.